IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

OMAR SHERIEFF CASH,         )
                         )  Civil Action
         Plaintiff     )  No. 12-cv-05268
                         )
        vs.             )
                         )
JOHN WETZEL,            )
  Secretary of Corrections;  )
JEFFREY WITHERITE,      )
  Staff Assistant-Western Region;)
DORINA YARNER,        )
  Chief Grievance Officer;   )
MIKE WENEROWICZ,       )
  Facility Manager       )
  SCI Graterford;        )
WENDY SHAYLOR,        )
  Grievance Coordinator;    )
E. VEROSKY, Lieutenant;    )
LEWIS, Sargent;        )
KRYESKI, Correctional Officer; )
AGUIAR, Correctional Officer  )
THOMAS DOHMAN;        )
JOHN SPAGNOLETTI;       )
JOSEPH TERRA;         )
JEFFREY BENDER;        )
MARK COX;            )
JOHN EVERDING;        )
BRIAN MOYER;         )
PARTICK FINA;         )
PARTICK CURRAN;        )
EPHRAIN RIVERA; and      )
ISAIAH HALL,         )
                         )
        Defendants[1]    )

\*     \*     \*

---

[1]    Defendants Wetzel, Witherite, Yarner, Wenerowicz, Shaylor, Verosky, Lewis, Kryeski, and Aguiar are all named in plaintiff's [Second] Amended Complaint; defendants Dohman, Spagnoletti, Terra, Bender, Cox, Everding, Moyer, Fina, Curran, Rivera, and Hall were named for the first time in plaintiff's Supplemental Complaint.

APPEARANCES:

        OMAR SHERIEFF CASH
            Pro Se


        ANTHONY P. VENDITTI, ESQUIRE
            On behalf of Defendants

                     *     *     *

JAMES KNOLL GARDNER
United States District Judge

## O P I N I O N

      This matter is before the court on plaintiff's
Supplemental Complaint Notice, filed August 12, 2013[2];
Commonwealth Defendants' Motion to Dismiss the Second Amended
Complaint[3], filed August 23, 2013; and plaintiff's Request for
Entry of Default, filed August 26, 2013[4].

      Commonwealth Defendants' Response in Opposition to
Plaintiff's Motion for Leave to Amend the Second Amended
Complaint was filed August 23, 2013[5].  A Motion in Opposition to
Defendants' Motion to Dismiss was filed by plaintiff on
October 7, 2013[6].  Defendants' Memorandum of Law in Opposition to

---

    [2]       Document 35.

    [3]       Document 37.

    [4]       Document 39.

    [5]       Document 38.

    [6]       Document 43.

Plaintiff's Motion for Default Judgment was filed August 28, 2013[7].

## SUMMARY OF DECISION

For the reasons expressed below, I grant plaintiff's motion for leave to file a supplemental complaint because his Supplemental Complaint properly supplements his [Second] Amended Complaint as allowed by Federal Rule of Civil Procedure 15(d).

Additionally, I grant in part and deny in part Commonwealth Defendants' Motion to Dismiss the Second Amended Complaint.  Defendants' motion to dismiss is granted with respect to Counts 7, 9, 14, 15, and 18.  Defendants' motion to dismiss is denied with respect to Counts 1-6, 10-13, and 16.

Defendants' motion to dismiss is granted with respect to Count 17 to the extent it seeks to dismiss claims against defendants Bender, Everding, Terra, Spagnoletti, and Wenerowicz. It is denied to the extent it seeks to dismiss claims against defendants Kryeski and Curran.

Finally, I deny plaintiff's Request for Entry of Default because all defendants have responded to plaintiff's Second Amended Complaint.

---

[7]     Document 40.

## JURISDICTION

This court has original jurisdiction over the subject matter of this action brought pursuant to 42 U.S.C. § 1983 based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331.

## VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Montgomery County, Pennsylvania, which is located in this judicial district. See 28 U.S.C. §§ 118, 1391(b).

## PROCEDURAL HISTORY

On October 17, 2012 plaintiff pro se filed a Motion for Leave to Proceed In Forma Pauperis[8].  By Order dated and filed October 22, 2012 I granted plaintiff's motion and directed the Clerk of Court to file plaintiff's initial Complaint[9].  The Complaint was filed on October 22, 2012[10].

On November 9, 2012 plaintiff filed a Motion for Leave to File an Amended Complaint[11].  By Order dated December 20, 2012 and filed December 21, 2012 I granted plaintiff's motion as unopposed and ordered the Clerk of Court to file plaintiff's

---

[8]     Document 3.

[9]     Document 4.

[10]    Document 5.

[11]    Document 11.  Plaintiff also filed a Motion for Leave to File an Amended Complaint on January 14, 2013 (Document 20) and filed a request for leave to submit a supplemental complaint, titled Supplemental Complaint Notice on August 28, 2013 (Document 35).

Amended Complaint[12].  The Amended Complaint was filed on December 21, 2013[13].  On January 4, 2013 the Commonwealth defendants filed a motion to dismiss plaintiff's Amended Complaint[14].

On January 14, 2013 plaintiff filed Plaintiff's Opposition to Commonwealth Defendants' Motion to Dismiss Amended Complaint[15] and filed a Motion for Leave to File [a Second] Amended Complaint[16].  On January 29, 2013 defendants filed the Commonwealth Defendants' Response in Opposition to Plaintiff's Motion for Leave to Amend the Amended Complaint[17].

By Order dated and filed July 22, 2013, I granted plaintiff's motion for leave to file a second amended complaint and ordered the Clerk of Court to file plaintiff's [Second] Amended Complaint, which was filed that day[18].  Additionally I gave defendants a deadline of August 12, 2013 to respond to plaintiff's [Second] Amended Complaint.

Plaintiff's [Second] Amended Complaint asserts fifteen separate causes of action which he identifies as Denial of

---

[12]    Document 14.

[13]    Document 15.

[14]    Document 16.

[15]    Document 19.

[16]    Document 20.

[17]    Document 22.

[18]    Document 33.

Access to Courts (Count 1); Supervisory Liability (Counts 2, 7, and 14); Conspiracy (Counts 3, 4, 8, 11 and 13); Failure to Intervene (Counts 5, 6, 9, 10, and 12); and Violation of Equal Protection (Count 15) against defendants Wetzel, Witherite, Varner, Wenerowicz, Shaylor, Verosky, Lewis, Aguiar and Kryeski.

On August 9, 2013 defendants filed a Motion for Extension of Time in Which to Respond to Plaintiff's Second Amended Complaint[19].  By Order dated and filed August 21, 2013 I granted defendants' motion and gave defendants until August 26, 2013 to respond to plaintiff's Second Amended Complaint[20].

On August 12, 2013 plaintiff filed the within Supplemental Complaint Notice, which sought leave to file a supplemental complaint pursuant Federal Rule of Civil Procedure 15(d)[21].

Attached to plaintiff's motion for leave to file a supplemental complaint is plaintiff's Supplemental Complaint which asserts additional causes of action for Retaliation (Count 16); Failure to Intervene (Count 17); and Due Process Violation (Count 18) against defendants Varner, Wenerowicz, Shaylor, Dohman, Spagnoletti, Terra, Bender, Cox, Everding, Moyer, Fina, Curran, Kryeski, Rivera, and Hall.

---

[19]     Document 34.

[20]     Document 36.

[21]     Document 35.

On August 23, 2013 defendants filed the Commonwealth Defendants' Response in Opposition to Plaintiff's Motion for Leave to Amend the Second Amended Complaint, which opposes defendant's motion for leave to file a supplemental complaint.

On August 23, 2013 defendants Varner, Wenerowicz, Shaylor, Dohman, Spagnoletti, Terra, Bender, Cox, Everding, Moyer, Fina, Curran, Kryeski, Rivera, and Hall filed the within Commonwealth Defendants' Motion to Dismiss the Second Amended Complaint.[22]  On October 7, 2013 plaintiff filed a Motion in Opposition to Defendants' Motion to Dismiss.

---

[22]      Document 37.

In Footnote 1 of Defendants' Motion to Dismiss the Second Amended Complaint, defendants explain that in my July 22, 2013 Order, I stated that plaintiff's Second Amended Complaint contained 15 counts whereas, by defendants' count, it only contained 6 counts.  Defendants then mention that they believed that the court may be including plaintiff's Amended Complaint by reference.

The fifth paragraph of footnote 1 of my July 22, 2013 Order lists the 15 specific claims which plaintiff included in his [Proposed Second] Amended Complaint.  As explained above, my July 22, 2013 Order also directed the Clerk of Court to file plaintiff's [Proposed Second] Amended Complaint, which the Clerk of Court did file that date on the docket as document number 33.

It appears that defendants' motion to dismiss the second amended complaint treats plaintiff's Supplemental Complaint Notice as the second amended complaint.  However, plaintiff's Supplemental Complaint Notice was not considered in my July 22, 2013 Order.  Rather, the Order directed defendants to respond to plaintiff's second amended complaint.

Footnote 1 of defendants' motion to dismiss the second amended complaint further states "to the extent Plaintiff's Second Amended Complaint includes claims made in his Amended Complaint, Commonwealth defendants include by reference the arguments presented in their Motion to Dismiss Plaintiff's Amended Complaint".

Because the within Commonwealth Defendants' Motion to Dismiss the Second Amended Complaint incorporates the arguments made in Commonwealth Defendants' Motion to Dismiss the Amended Complaint, I have considered the arguments made in both motions.

On August 26, 2013 plaintiff filed the within Request for Entry of Default, requesting the court to enter default against the defendants for failure to plead or otherwise respond to the [Second] Amended Complaint.  On August 28, 2013 defendants filed a Memorandum of Law in Opposition to Plaintiff's Motion for Default Judgment.

## STANDARD OF REVIEW

### Motion to Supplement Complaint

The District Court may permit a party to file a supplemental pleading "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed.R.Civ.P. 15(d); see also Crosby v. Piazza, 465 Fed.Appx. 168, 174 (3d Cir. 2012).  A supplemental complaint "refers to events that occurred after the original pleading was filed."  Owens-Illinois, Inc. v. Lake Shore Land Co., 610 F.2d 1185, 1188-1189 (3d Cir. 1979).

An application for leave to file a supplemental pleading "is addressed to the sound discretion of the trial court and should be freely granted when doing so will promote the justiciable disposition of the case, will not cause undue prejudice or delay or trial inconvenience and will not prejudice the rights of any parties to the action." Bates v. Western Electric, 420 F.Supp. 521, 525 (E.D.Pa. 1976)(Broderick, J.).

## Motion to Dismiss

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion requires the court to examine the sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957) (abrogated in other respects by Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  Generally, in ruling on a motion to dismiss, the court relies on the complaint, exhibits attached to the complaint, and matters of public record, including other judicial proceedings.  Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2008).

Except as provided in Federal Rule of Civil Procedure 9, a complaint is sufficient if it complies with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief".  Rule 8(a)(2) does not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.  Twombly, 550 U.S. at 570, 127 S.Ct. at 1974, 167 L.Ed.2d at 949.[23]

---

[23]     The United States Supreme Court's Opinion in Ashcroft v. Iqbal, 556 U.S. 662, 684, 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868, 887 (2009), states clearly that the "facial plausibility" pleading standard set forth in Twombly

(Footnote 23 continued):

In determining whether a complaint is sufficient, the court must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. Fowler, 578 F.3d at 210 (citing Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).

Although "conclusory" or "bare-bones allegations" will not survive a motion to dismiss, Fowler, 578 F.3d at 210, a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. Phillips, 515 F.3d at 231. Nonetheless, to survive a Rule 12(b)(6) motion, the complaint must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Id. at 234 (quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940) (internal quotations omitted).

The court is required to conduct a two-part analysis when considering a Rule 12(b)(6) motion. First, the factual

---

(Continuation of footnote 23):

applies to all civil suits in the federal courts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). This showing of facial plausibility then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged", and that plaintiff is entitled to relief. Fowler, 578 F.3d at 210 (quoting Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949, 173 L.Ed.2d at 884).

matters averred in the complaint, and any attached exhibits, should be separated from legal conclusions asserted.  <u>Fowler</u>, 578 F.3d at 210.  Any facts pled must be taken as true, and any legal conclusions asserted may be disregarded.  <u>Id.</u> at 210-211.

Second, the court must determine whether those factual matters averred are sufficient to show that the plaintiff has a "plausible claim for relief."  <u>Id.</u> at 211 (quoting <u>Iqbal</u>, 556 U.S. at 679, 129 S.Ct. at 1950, 178 L.Ed.2d at 884).

Ultimately, this two-part analysis is "context-specific" and requires the court to draw on "its judicial experience and common sense" to determine if the facts pled in the complaint have "nudged [plaintiff's] claims" over the line from "[merely] conceivable [or possible] to plausible."  <u>Iqbal</u>, 556 U.S. at 679-680, 129 S.Ct. at 1949-1951, 178 L.Ed.2d at 884-885.

A well-pled complaint may not be dismissed simply because "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."  <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940-941 (internal quotations omitted).

### **Motion for Default**

"When a party against whom a judgment or affirmative relief is sought has failed to plead or otherwise defend, and

that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed.R.Civ.P. 55(a).

## FACTS

Based upon the averments in plaintiff's Second Amended Complaint and Supplemental Complaint, which I must accept as true under the applicable standard of review discussed above, the pertinent facts are as follows.

### Second Amended Complaint

On May 26, 2011 plaintiff was transported from State Correctional Institution-("SCI") Albion to SCI-Graterford to appear at a pre-trial hearing for a capital offense case in Philadelphia County[24].  While at SCI-Graterford plaintiff was in administrative segregation and was housed on the death row unit, J-Unit[25].

On June 24, 2011, Correctional Officer Aguiar and Sargent Lewis instructed plaintiff to be handcuffed and escorted plaintiff to I-Unit without notifying plaintiff that his bed assignment was being changed[26].  Upon arriving at I-Unit, plaintiff was strip searched and placed in a cell[27].

---

[24]     Second Amended Complaint ¶ 14.

[25]     Id. at ¶¶ 15-16.

[26]     Id. at ¶¶ 17-19.

[27]     Id. at ¶ 20.

Plaintiff was notified by an inmate housed on J-Unit that Officer Aguiar ate plaintiff's commissary items and Sargent Lewis threw plaintiff's documents into a trash can while stating "murderers and rapists need to stay in jail, so he won't be needing this sh*t"[28].  While this was occurring, Lieutenant Verosky approached and asked Officer Aguiar and Sargent Lewis what they were doing to which Officers Aguiar and Lewis responded, "taking out the trash"[29].

After such transfers plaintiff did not receive his personal property which consisted of: transcripts from a previous 30-day trial; discovery in his pending capital case; $52.00 worth of commissary items; and signed notarized affidavits provided by witnesses in his pending capital case[30].

Plaintiff's direct appeal in the pending capital case was denied on December 14, 2011[31].  On August 14, 2012 plaintiff filed a Petition for Post Conviction Collateral Relief in an attempt to notify the court of his inability to actively participate in his appellate process because of the destruction of his trial transcripts[32].

---

[28]     Second Amended Complaint ¶ 26.

[29]     Id.

[30]     Id. at ¶¶ 21-22.

[31]     Id. at ¶ 30.

[32]     Id. at ¶ 31.

Plaintiff filed an initial grievance concerning his missing property on June 25, 2011[33]. On July 15, 2011 Plaintiff received a response from Lieutenant Verosky denying his initial grievance[34].

Plaintiff appealed the denial of the grievance to Superintendent Mike Wenerowicz on July 15, 2011[35]. On September 12, 2011 plaintiff received a response to the grievance appeal denying the grievance at the appellate level, which response was signed by Superintendent Wenerowicz[36].

On September 18, 2011, plaintiff appealed the denial of his grievance appeal to the Pennsylvania Department of Corrections Chief Grievance Officer, Dorinda Varner, which appeal was dismissed because it was untimely[37].

Plaintiff was transferred from SCI-Graterford to SCI-Albion on June 30, 2011 without his missing property. On July 7, 2011 plaintiff notified the Program Review Committee at SCI-Albion that none of his property or legal work had arrived from SCI-Graterford. On July 13, 2011 plaintiff received a

---

[33]    Second Amended Complaint ¶ 24.

[34]    Id. at ¶ 34.

[35]    Id. ¶ 35.

[36]    Id. at ¶ 36.

[37]    Id. at ¶¶ 37-38.

legal box which contained items of clothing which he had removed prior to his transport from SCI-Graterford[38].

Plaintiff submitted a letter to Secretary of Corrections Wetzel describing what had occurred[39].  Jeffrey Witherite, Staff Assistant, Pennsylvania Department of Corrections responded to plaintiff's letter on June 18, 2012 informing plaintiff that pursuant to his review, plaintiff's grievances had been responded to in an appropriate manner[40].

### Supplemental Complaint

On January 15, 2013 plaintiff was temporarily transferred from SCI-Albion to SCI-Graterford[41].  During the transfer, plaintiff's property was stolen[42].  When plaintiff inquired as to his property, he was told "we (officers) can do anything we want to you until you drop that lawsuit because you pissed-off the higher-ups"[43].

On January 22, 2013, plaintiff received a letter from his attorney which had been forwarded to SCI-Graterford from

---

[38]    Second Amended Complaint ¶ 28.

[39]    Id. at ¶ 39.

[40]    Id.

[41]    Supplemental Complaint ¶ 22.

[42]    Id.

[43]    Id.

SCI-Albion and which had been opened outside of his presence by Inspector John/Jane Doe[44].

Plaintiff he was reviewed by SCI-Graterford's Program Review Committee on January 23, 2013[45].  During such review, plaintiff requested approval for personal and legal phone calls[46].  Plaintiff's request was denied by deputy Dohman, who told plaintiff "stop filing lawsuits and you'll get your phone calls[47]."

On January 24, 2013 plaintiff was transferred to the death row wing of SCI-Graterford[48].  When plaintiff asked Correctional Officer Rivera why he was being transferred to death row he was told "you better take the plea deal or you'll be over there permanently[49]."

On January 24, 2013 plaintiff received another opened letter from his attorney, which had been opened outside of plaintiff's presence by Inspector John/Jane Doe[50].

On February 5, 2013 plaintiff was transferred from SCI-Graterford to SCI-Albion.[51]  On March 12, 2013 plaintiff was

---

[44]     Supplemental Complaint ¶ 23.

[45]     Id. at ¶ 24.

[46]     Id.

[47]     Id.

[48]     Id. at ¶ 25.

[49]     Id.

[50]     Id. at ¶ 26.

transferred from SCI-Albion back to SCI-Graterford for a post-conviction in hearing in Bucks County, Pennsylvania[52].   Upon arrival at SCI-Graterford, plaintiff was again placed in administrative custody and housed on death row.

On March 14, 2013 plaintiff attended a post-conviction hearing during which he was unable to effectively litigate and present evidence because of the absence of his trial transcripts[53].

On March 21, 2013 plaintiff was strip-searched prior to leaving his cell to go to the law library.[54]  During the strip-search, Officer Hall made several derogatory remarks to plaintiff and instructed plaintiff to squeeze his penis and perform other provocative acts[55].  Plaintiff requested to use the sex abuse hotline, to which Officer Hall told plaintiff "file another lawsuit"[56].

On March 25, 2013 Officer Fina informed plaintiff that plaintiff would be transferred back to SCI-Albion the next day

---

[51]    Supplemental Complaint ¶ 27.

[52]    Id.

[53]    Id. at ¶ 29.

[54]    Id. at ¶ 30.

[55]    Id.

[56]    Id. at ¶ 30.

and thus he needed to give up his property[57].   Plaintiff requested that his property be inventoried, to which Officer Fina responded "I could throw all this sh*t away just like we did before and nothing's going to happen just like nothing happened before" and "go ahead and file another lawsuit"[58]. Officer Fina then took plaintiff's property without inventorying it[59].

On March 27, 2013 plaintiff asked Lieutenant Bender to give plaintiff back his personal property because plaintiff had not yet been transferred to SCI-Albion[60].   Lieutenant Bender responded "you may have to file another lawsuit to get that stuff back.  All this trouble you're going through could easily go away if you would just drop the lawsuit[61]."

On April 1, 2013, plaintiff was transferred from SCI-Albion to SCI-Graterford and was housed on death row under administrative custody status[62].  On April 11, 2013, plaintiff received his legal materials but did not receive his mitigation

---

[57]     Supplemental Complaint ¶ 31.

[58]     <u>Id.</u>

[59]     <u>Id.</u>

[60]     <u>Id.</u> at ¶ 33.

[61]     <u>Id.</u>

[62]     <u>Id.</u> at ¶¶ 35-36.

evidence[63].  Plaintiff met with his attorneys on April 15, 2013, but was unable to provide them with his mitigation evidence because such evidence was withheld by Sargent Curran and Officer Kryeski[64].

On April 17, 2013 plaintiff was reviewed by the Program Review Committee at SCI-Graterford during which he requested his mitigation evidence along with his cosmetic items[65].  Deputy Dohman responded to plaintiff's request stating "we're lazy, we don't have time to satisfy every temp transfer" and "just buy new cosmetics"[66].

On April 29, 2013 before being transported to the Criminal Justice Center in Philadelphia Pennsylvania, plaintiff asked J-Unit manager Joseph Terra for his mitigation evidence to which Terra responded "stop bitching"[67].

On May 2, 2013 and then again on May 28, 2013 plaintiff spoke with Captain Spagnoletti during his tour of J-Unit and reported the withholding of plaintiff's mitigation evidence and other property[68].  On May 15, 2013 plaintiff spoke

---

[63]     Supplemental Complaint ¶ 37.

[64]     Id. at ¶ 38.

[65]     Id. at ¶ 39.

[66]     Id.

[67]     Id. at ¶ 41.

[68]     Id. at ¶¶ 42, 44.

with J-Unit manager Terra about his mitigation evidence, to which plaintiff was told "all of your property was provided to you on [April 11, 2013]"[69].

On June 7, 2013 Dr. Cooker, a mitigation expert witness, visited plaintiff at SCI-Graterford.  Lieutenant Bender refused to give plaintiff his mitigation evidence for plaintiff's meeting with Dr. Cooker[70].  On June 10, 2013, plaintiff was given his mitigation evidence to attend a post-conviction hearing in Bucks County, Pennsylvania; however, such evidence was not applicable to that hearing[71].

On June 18, 2013 plaintiff was transported from SCI-Graterford to SCI-Albion without his legal materials which were stored in SCI-Graterford's Security department[72].

### CONTENTIONS OF THE PARTIES

### Supplemental Complaint

### Plaintiff's Contentions

Plaintiff seeks leave to file a supplemental complaint under Federal Rule of Civil Procedure 15(d) seeking to add allegations of retaliation which occurred subsequent to the filing of his Second Amended Complaint.

---

[69]     Supplemental Complaint ¶ 43.

[70]     Id. at ¶ 44(e).

[71]     Id. at ¶ 44(f).

[72]     Id. at ¶ 44(k).

**Defendants' Contentions**

Defendants argue that plaintiff's request should be denied because the request is incurable and futile.

## Motion to Dismiss

**Defendants' Contentions**

Defendant seeks dismissal of all claims in the Second Amended Complaint, including those set forth in the Supplemental Complaint, for failure to state a claim upon which relief can be granted. Defendant argues that the Eleventh Amendment bars plaintiff's Section 1983 claims for monetary damages against defendants, and, generally, that plaintiff has failed to show that certain defendants had personal involvement in the constitutional violations.

Specifically, defendant argues that plaintiff has failed to allege a denial-of-access-to-courts claim because plaintiff does not allege actual injury to a legitimate claim. Defendants argue that plaintiff's retaliations claims fail because, they allege, plaintiff has filed to allege what protected conduct he attempted to pursue, adverse action suffered, or causation.

Next, defendants argue that plaintiff's failure-to-intervene claims should be dismissed because he has not alleged that defendants had a duty and opportunity to intervene in an existing constitutional violation.

Additionally, defendants argue that plaintiff fails to state a due process violation against defendant Varner because a prison official's denial of an inmate's grievance does not constitute a due process violation.  Defendants then argue that plaintiff's conspiracy claims must fail because plaintiff has not alleged any facts suggesting a meeting of the minds, agreement or mutual understanding.

Next, defendants argue that plaintiff's supervisory liability claims must fail because he has not identified a supervisory practice that the supervisor failed to employ, without which there was an unreasonable risk of the ultimate injury to which the supervisor was indifferent and which led to the underlying violation.

Finally, defendants allege that plaintiff's equal-protection-clause-violation claim must fail because plaintiff has not alleged that he is a member of a protected class or that he was selectively treated because of an intention to discriminate on the basis of impermissible conditions.

### Plaintiff's Contentions

Plaintiff contends that defendants illegally confiscated and destroyed plaintiff's legal material concerning a pending capital case, and that those actions violated his constitutionally protected rights.  Specifically, plaintiff contends that defendants Lewis, Aguiar, and Verosky denied him

access to the courts which prevented him from preparing a litigable post-conviction-relief-act petition.

Next, plaintiff alleges that defendants conspired to cover-up the constitutional violations by falsifying records, misrepresenting facts, and stonewalling.  Finally, plaintiff alleges that defendants actions denied plaintiff equal protection and due process rights.

### Motion to Dismiss

### Plaintiff's Contentions

Plaintiff contends that the Clerk of Court should enter default against defendants for failure to plead because defendants were ordered to respond to plaintiff's Second Amended Complaint by August 12, 2013 and failed to file a timely response to the Second Amended Complaint.

### Defendants' Contentions

Defendants contend that entry of default is not appropriate because defendants filed their motion to dismiss on August 23, 2013 which, according to the court's August 21, 2013 Order, was a timely response.

### DISCUSSION

### Motion for Leave to Supplement Complaint

Federal Rules of Civil Procedure 15(d) provides that "[u]pon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit him to serve a

supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." It is within the sound discretion of the district court whether to allow a party to file a supplemental pleading. Evans v. Lehman, 1995 WL 82526 (E.D.Pa. February 28, 1995)(Hutton, J.).

"An application for leave to file a supplemental pleading ... should be freely granted when doing so will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the parties." Evans, 1995 WL 82526 at *1.

Here, if taken as true, plaintiff's Supplemental Complaint sets forth claims that he is being retaliated against for filing the present action. Furthermore, defendants have not argued that they would be prejudiced by plaintiff supplementing his complaint, rather they argue that plaintiff's request should be denied as futile.

Because plaintiff's supplemental complaint adds claims which may state a cause of action for retaliation, and because defendants would not be prejudiced by plaintiff supplementing his second amended complaint, I grant plaintiff's motion for leave to file a supplemental complaint.

Therefore, as described above, plaintiff's [Second] Amended Complaint and plaintiff's Supplemental Complaint, together set forth plaintiff's claims in this matter.

### Motion to Dismiss

### Eleventh Amendment Bar

The Eleventh Amendment bars an action against a state regardless of whether the plaintiff seeks legal or equitable relief.  See Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).  Additionally, the Eleventh Amendment extends immunity to suits against state officials in their official capacity because "a suit against a state official in his or her official capacity is...no different from a suit against the State itself."  Will v. Michigan Department of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

Plaintiff's [Second] Amended Complaint sues all defendants individually and in their official capacities. Because the Eleventh Amendment bars suits against such defendants in their official capacities, defendant's motion to dismiss is granted to the extent is seeks dismissal of claims against all defendants in their official capacities.

### Right to Access the Courts - Count 1

"It is now established beyond doubt that prisoners have a constitutional right of access to the courts."  Bounds v.

Smith, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977).  To state a claim for denial of his right to access the courts plaintiff must allege (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived him of right of access to the courts.  Muhammad v. Hilbert, 906 F.Supp. 267, 270 (E.D.Pa. 1995)(Brodie, J.)("Access to court must be adequate, effective and meaningful under the Federal Constitution.")  "[T]o pursue a claim of denial of access to the courts an inmate must allege actual injury, such as the loss or rejection of a legal claim." Oliver v. Fauver, 118 F.3d 175, 177 (3d Cir. 1997)(citing Lewis v. Casey, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)).

"[A] public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law."  West v. Atkins, 487 U.S. 42, 50, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40, 50 (1988).  See also Parratt v. Taylor, 451 U.S. 527, 535-536, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420, 429 (1981) where the United States Supreme Court determined that conduct by state prison officials was "under color of state law".

Because plaintiff alleges that the acts complained of were committed by defendants Lewis, Aguiar, Curran, and Kryeski during the performance of their duties as state corrections officers, plaintiff has sufficiently pled that defendants acted

under color of state law.  See Scott v. Carette, 2013 WL 5842347
at *4 (E.D.Pa. October 31, 2013)(Surrick, J.).

   "The right of access to the courts must be adequate,
effective and meaningful and must be freely exercisable without
hindrance or fear of retaliation." Milhouse v. Carlson,
652 F.2d 371, 374 (3d Cir. 1981)(internal citations removed).
Here, plaintiff has alleged that his right of access to the
courts was denied when defendants Lewis and Aguiar separated
plaintiff from his legal materials which caused him to be unable
to adequately litigate his direct appeal which therefore was
denied on December 14, 2011.  Because plaintiff has alleged a
loss of a legal claim as a result of the removal of his legal
documents, he has stated a claim of denial of access to courts.
In Oliver v. Fauver, 118 F.3d 175, 177 (3d Cir. 1997) the United
States Court of Appeals for the Third Circuit held that "to
pursue a claim of denial of access to the courts an inmate must
allege actual injury, such as the loss or rejection of a legal
claim".

   With respect to defendants Curran and Kryeski,
plaintiff alleged that they withheld his legal materials during
a meeting with his attorneys, but has not alleged the loss or
rejection of a legal claim as a result.  Therefore plaintiff has
failed to state a claim for denial of access to the courts by
defendants Curran and Kryeski.

Accordingly defendants' motion to dismiss is denied to the extent it seeks to dismiss plaintiff's claim of denial of access to courts against defendants Lewis and Aguiar.  However, defendants' motion to dismiss is granted to the extent that it seeks to dismiss plaintiff's claims for denial of access to courts against defendants Curran and Kryeski.

### Retaliation - Count 16

In order to prevail on a § 1983 retaliation claim, plaintiff must allege that (1) the conduct which led to the retaliation was constitutionally protected; (2) plaintiff was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action.  See Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471, 484 (1977); see also Alexander v. Fritch, 396 Fed.Appx. 867, 871 (3rd Cir. 2010).

"As a threshold matter, a prisoner-plaintiff in a retaliation case must prove that the conduct which led to the alleged retaliation was constitutionally protected." Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Here plaintiff's conduct of filing a lawsuit against prison officials is constitutionally protected conduct.  See Mearin v. Vidonish, 450 Fed.Appx. 100, 102 (3d Cir. 2011).  In Bounds v. Smith, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977) the

-28-

Supreme Court stated, "It is now established beyond doubt that prisoners have a constitutional right of access to the courts."

Next, plaintiff must show that he was subject to adverse action by a state actor.  Conduct is adverse action if a factfinder could conclude that the alleged retaliatory conduct was sufficient "to deter a person of ordinary firmness" from exercising his rights.  See Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)(citing Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000).

Here plaintiff has alleged that he was subject to adverse action when (1) he was told by defendant Moyer "we (officers) can do anything we want to you until you drop that lawsuit because you pissed-off the higher-ups"; (2) his request to make personal and legal phone calls was denied by defendant Dohman; (3) he was transferred to the death row wing and told by defendant Rivera "you better take the plea deal or you'll be over there permanently"; (4) his request to have his property inventoried was denied  by defendant Fina who stated "I could throw all this sh*t away just like we did before and nothing's going to happen just like nothing happened before" and "go ahead and file another lawsuit"; (5) upon plaintiff's request for return of his personal property, including portions of his legal file, he was told by defendant Bender "you may have to file another lawsuit to get that stuff back.  All this trouble you're

going through could easily go away if you would just drop the
lawsuit"; (6) plaintiff was strip searched by defendant Hall who
made derogatory remarks to plaintiff, instructed him to squeeze
his penis and perform provocative acts, and upon plaintiff's
request to use the sex abuse hotline, defendant Hall told
plaintiff "file another lawsuit"; and (7) defendants Curran and
Kryeski withheld plaintiff's mitigation evidence during a legal
visit with Attorneys Mandell and Kauffman.

In this case, plaintiff's allegations of adverse
action, if true, would be sufficient to deter a person of
ordinary firmness from exercising his rights.  In Allah,
229 F.3d at 225 (3d Cir. 2000) the Third Circuit concluded that
reduced access to phone calls, reduced access to the commissary,
reduced access to recreation, confinement in his cell for all
but five hours per week, denial of access to rehabilitative
programs and, significantly, inadequate access to legal research
materials and assistance, could significantly deter a person
from exercising his first amendment rights.

Next plaintiff must show that the adverse action was
by a state actor.  Here plaintiff has alleged that defendants
Moyer, Dohman, Rivera, Fina, Bender, Hall, Curran and Kryeski
were responsible for the adverse actions in question.
Defendants Moyer, Dohman, Rivera, Fina, Bender, Hall, Curran and
Kryeski are all corrections officers employed by the

Commonwealth of Pennsylvania, and as such, are state actors.
Thus, plaintiff has satisfied the state actor requirement.

Plaintiff's retaliation claim states that such
retaliation is in violation of the First, Fifth, and Fourteenth
Amendments.  The First Amendment's protection of the right to
petition applies in this matter.  However, because plaintiff's
lawsuit alleges misconduct by state officials he does not assert
a Fifth Amendment claim, which only restricts federal government
action, but rather states a Fourteenth Amendment claim for state
action.  See Feliciano v. Dohman, 2013 WL 1234225, *10 (E.D.Pa.
March 26, 2013) where United States Senior District Judge
Buckwalter stated that "the rights provided by the Fifth
Amendment do not apply to the actions of state officials"; see
also Nguyen v. United States Catholic Conference, 719 F.2d. 52,
54 (3d Cir. 1983).  Accordingly, defendant's motion to dismiss
is granted to the extent that it seeks to dismiss plaintiff's
claim for a violation of the Fifth Amendment.

Finally, to state a claim for retaliation, plaintiff
must allege that the protected activity was a substantial
motivating factor in the state actor's decision to take the
adverse action.  See Mt. Healthy, 429 U.S. at 287, 97 S.Ct.
at 576, 50 L.Ed.2d at 484.  Plaintiff's complaint contains
various statements from defendants which demonstrate that the
protected activity of filing a lawsuit was a substantial

motivating factor in the prison official defendant's adverse actions[73].

Therefore, plaintiff has sufficiently pled a cause of action for retaliation against defendants Moyer, Dohman, Rivera, Fina, Bender, Hall, Curran, and Kryeski.  Accordingly, to the extent defendants' motion to dismiss seeks to dismiss plaintiff's claim for retaliation by defendants Moyer, Dohman, Rivera, Fina, Bender, Hall, Curran and Kryeski (Count 16), the motion to dismiss is denied.

### Conspiracy - Counts 3, 4, 8, 11, 13

To state a Section 1983 conspiracy claim, a plaintiff must allege: (1) the existence of a conspiracy involving state action; and (2) a depravation of civil rights in furtherance of the conspiracy by a party to the conspiracy.  See Panayotides v. Rabenold, 35 F.Supp.2d 411, 419 (E.D.Pa. 1999) (Joyner, J.), aff'd, 210 F.3d 358 (3d Cir. 2000).

As such, a claim for conspiracy pursuant to Section 1983 must specifically allege the "combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged

---

[73]    See e.g. Supplemental Complaint ¶ 22 "we [officers] can do anything we want to you until you drop that lawsuit because you pissed-off the higher-ups"; Id. ¶ 24 "stop filing lawsuits and you'll get your phone calls." "file another lawsuit"; Id. ¶ 31 "go ahead and file another lawsuit"; Id. ¶ 33 "you may have to file another lawsuit to get that stuff [mitigation evidence and personal effects] back.  All this trouble you['re] going through could easily go away if you would just drop the lawsuit".

chain of events." Id. (citations omitted).  "Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain other actions of the alleged conspirators taken to achieve that purpose will be deemed sufficient." Id.

Plaintiff alleges a multi-party conspiracy the purpose of which was to deny plaintiff access to the courts.  He alleges that defendants Lewis Aguiar and Verosky conspired together to deprive plaintiff of his constitutional rights when they conspired to remove plaintiff's legal materials.  Plaintiff further alleges that in furtherance of the conspiracy defendant Kryeski deprived plaintiff of his rights by assuring him that all of his legal materials were present when in fact they were not and defendants Wenerowicz, Varner, and Witherite participated in the conspiracy to cover up the violation of plaintiff's rights by ignoring plaintiff's complaints and refusing to investigate and dismissing grievances.

Conspiracy claims must be based on more than merely suspicion and speculation.  Young v. Kann, 926 F.2d 1396, 1405 (3d Cir. 1991).  However, because plaintiff is proceeding pro se, and because the allegations in his complaint set forth allegations that could constitute a conspiracy between defendants Lewis, Aguiar, Verosky, Kryeski, Wenerowicz, Varner,

and Witherite, plaintiff has satisfied the first requirement for pleading a conspiracy.

In <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251, 261 (1976) the United States Supreme Court stated that

> a pro se complaint, "however inartfully pleaded", must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

(citing <u>Haines v. Kerner</u>, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)).

Plaintiff has adequately pled that the conspiracy led to a deprivation of his rights because, as discussed above, plaintiff has stated a claim that defendants' actions resulted in a denial of his right to access courts.

Accordingly, because plaintiff has stated a claim for civil conspiracy, defendants' motion to dismiss is denied to the extent it seeks to dismiss Counts 3, 4, 8, 11, 13 for conspiracy.

### Failure to Intervene - Counts 5, 6, 9, 10, 12, 17

A law enforcement officer is directly liable under Section 1983 if such officer, "whether supervisory or not, fails or refuses to intervene when a constitutional violation ... takes place in his presence." <u>Smith v. Mensinger</u>, 293 F.3d 641,

650 (3d Cir. 2002).  "However, an officer is only liable if there is a realistic and reasonable opportunity to intervene." Smith, 293 F.3d at 651.

### Failure to Intervene - Denial of Access to Courts

With regard to defendants Aguiar and Verosky, plaintiff has asserted that both defendants were present as defendant Lewis destroyed plaintiff's legal materials and neither intervened to stop this civil rights violation.  Because plaintiff has alleged that defendants were present, and because he has alleged that a civil rights violation occurred, I conclude that these officers had a realistic and reasonable opportunity to intervene in defendant Lewis's misconduct.  See e.g. Anderson v. City of Philadelphia, 2012 WL 3235163 (E.D.Pa. August 8, 2012)(Buckwalter, S.J.).  Accordingly, defendant's motion to dismiss is denied to the extent that it seeks to dismiss plaintiff's failure to intervene claims against defendants Aguiar and Verosky in Counts 5 and 6.

With regard to defendant Wenerowicz, although plaintiff has alleged that defendant Wenerowicz was aware of an alleged civil rights violation, plaintiff has not alleged that defendant Wenerowicz was present during the violation or had a realistic and reasonable opportunity to intervene.  Accordingly, defendant's motion to dismiss is granted to the extent it seeks

to dismiss plaintiff's failure to intervene claims against
defendant Wenerowicz in Count 9.

Failure to Intervene - Conspiracy

With regard to plaintiff's failure to intervene claims
against defendants Varner and Witherite for failure to intervene
and stop the conspiracy to deny plaintiff's access to courts,
plaintiff alleged that defendants Varner and Witherite were
aware of the conspiracy to deny plaintiff's access to courts and
failed to intervene and remedy the situation.

Here plaintiff has alleged that defendant Varner knew
about the conspiracy to deprive plaintiff of his right of access
to courts and as Chief Grievance Officer for the Pennsylvania
Department of Corrections, failed to investigate and stop the
conspiracy.  With regard to defendant Witherite, plaintiff
alleges that as staff assistant to Secretary of Corrections
Wetzel, defendant Witherite knew of the conspiracy to deprive
plaintiff's access to courts after receiving a letter from
plaintiff explaining the conspiracy and that defendant Witherite
failed to intervene and stop the conspiracy.

Because plaintiff has alleged that defendants Varner
and Witherite both knew of an ongoing conspiracy to deprive
plaintiff of his rights, and because plaintiff has alleged that
they were in the position to investigate and stop the
conspiracy, and yet did not, plaintiff has adequately stated a

claim for failure to intervene to stop the conspiracy to deprive
plaintiff of his right of access to courts against both
defendants Varner and Witherite.

Accordingly defendants' motion to dismiss is denied to
the extent it seeks to dismiss claims for failure to intervene
against defendants Varner and Witherite in Counts 10 and 12.

<u>Failure to Intervene – Retaliation</u>

With regard to plaintiff's failure to intervene claims
against defendants Kryeski, Curran, Bender, Everding, Terra,
Spagnoletti, and Wenerowicz for failure to intervene while he
was being retaliated against in violation of Section 1983,
plaintiff has only alleged that defendants Kryeski and Curran
were present during the violation or had a realistic and
reasonable opportunity to intervene during retaliation.
Specifically, defendants Kryeski and Curran each decided to
withhold mitigation evidence in the presence of the other and
each failed to intervene in the other's withholding.

However, plaintiff alleges that defendants Bender,
Everding, Terra, Spagnoletti, and Wenerowicz were notified about
the retaliatory conduct during conversation with plaintiff or
through grievances, not that they were present or had a
realistic and reasonable opportunity to intervene and stop the
retaliation.

Accordingly defendants' motion to dismiss is denied to the extent it seeks to dismiss claims for failure to intervene against defendants Kryeski and Curran in Count 17.  Defendants' motion to dismiss is granted to the extent it seeks to dismiss plaintiff's claims for failure to intervene against defendants Bender, Everding, Terra, Spagnoletti, and Wenerowicz in Count 17.

### Supervisor Liability - Counts 2, 7, 14

The Third Circuit Court of Appeals has explained that there are two theories of supervisory liability in a Section 1983 action: (1) supervisors can be liable in their official capacity if they established and maintained a policy, practice, or custom which directly caused constitutional harm; or, (2) they can be liable personally if they participated in violating the plaintiff's rights, directed others to violate them, or, as persons in charge, had knowledge of and acquiesced in their subordinates' violations.  Santiago v. Warminster Township, 629 F.3d 121, 128-129 n.4 (3d Cir. 2010).  In Baker v. Monroe Township, 50 F.3d 1186, 1190-1191 (3d Cir. 1995) the Third Circuit held that to support a claim of supervisor liability a plaintiff must show that defendant participated in violating his rights, or that he directed others to violate them, or that he had knowledge of and  acquiesced in his subordinates' violations.

Plaintiff asserted supervisor liability against defendant Verosky for acquiescing in defendants Lewis and Aguiar removal of plaintiff's legal documents.  Therefore he has adequately stated a claim for supervisory liability because a supervisor can be liable for having knowledge of and acquiescing in their subordinates' violations.

Additionally, plaintiff asserted supervisor liability against defendant Wenerowicz for knowing of the alleged conspiracy to destroy legal documents and failing to remedy the wrong; and against defendant Wetzel for knowing of the violation of plaintiff's rights and failing to investigate and intervene despite ample time.  Defendant has not alleged that either defendant personally directed or had actual knowledge of, and acquiesced in, the alleged civil rights violations which plaintiff suffered.

Therefore plaintiff has not stated a claim of supervisor liability against defendant Wenerowicz or Wetzel. Accordingly, defendants' motion to dismiss is granted to the extent that it seeks to dismiss plaintiff's claims against defendants Wenerowicz and Wetzel for supervisor liability.

### Equal Protection Clause Violation - Count 15

Plaintiff has alleged a violation of the Equal Protection Clause of the Fourteenth Amendment because while held in SCI-Graterford, he was transferred from the J-Unit to the

L-Unit.  "The Equal Protection Clause requires that all people similarly situated be treated alike."  Gilliam v. Holt, 188 Fed.Appx. 79, 81 (3d Cir. 2006).

To state a claim for an equal protection clause violation, a plaintiff must show that (1) compared with others similarly situated he was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.  Sabatini v. Reinstein, 1999 WL 636667 (E.D.Pa. August 20, 1999)(Ludwig, J.).

Here, plaintiff alleges that all other pending capital case inmates were housed in J-Unit, thus his transfer to L-Unit was against policy and was discriminatory.  Plaintiff has not alleged, however, that his transfer was motivated by an intention to discriminate for impermissible considerations.

Therefore plaintiff has failed to state a claim for an equal protection clause violation.  Accordingly, defendant's motion to dismiss is granted to the extent that it seeks to dismiss plaintiff's claim for an equal protection clause violation.

## Due Process Violation - Count 18

Plaintiff has alleged a violation of the Due Process Clause of the Fourteenth Amendment because of defendant Varner's failure to address the grievances he filed and the inadequacy of the response which he received.

In <u>Jackson v. Beard</u>, 2008 WL 879923 (E.D.Pa. March 31, 2008), United States Senior District Judge Buckwalter dismissed plaintiff's claims where such claims rested on denial or failure to investigate grievances because prison grievance procedures confer only procedural protections, not substantive rights.  In doing so he stated that "Inmate grievance procedures in themselves do not confer a liberty interest protected by the Due Process Clause."

Accordingly, defendants' motion to dismiss is granted to the extent that it seeks to dismiss plaintiff's due process claim against defendant Varner.

### Request for Entry of Default

"When a party against whom a judgment or affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed.R.Civ.P. 55(a).

Plaintiff's Second Amended Complaint asserts causes of action against defendants Wetzel, Witherite, Varner, Wenerowicz, Shaylor, Verosky, Lewis, Aguiar, and Kryeski.  Plaintiff's

Supplemental Complaint asserts causes of action against defendants Varner, Wenerowicz, Shaylor, Dohman, Spagnoletti, Terra, Bender, Cox, Everding, Moyer, Fina, Curran, Kryeski, Rivera, and Hall.

Although plaintiff's Request for Entry of Default does not name the specific defendants against whom he requests default be entered, because a district court has an obligation to construe pro se plaintiffs' pleadings liberally and a reasonable construction of plaintiff's request seeks default entered against each defendant, I consider plaintiff's request to refer to each of the above named defendants.

Defendants' response to plaintiff's Second Amended Complaint was due by August 26, 2013.  On August 23, 2013 defendants Varner, Wenerowicz, Shaylor, Dohman, Spagnoletti, Terra, Bender, Cox, Everding, Moyer, Fina, Curran, Kryeski, Rivera, and Hall filed the Commonwealth Defendants' Motion to Dismiss the Second Amended Complaint.

Footnote 1 of Defendants' Motion to Dismiss the Second Amended Complaint states "defendants include by reference the arguments presented in their Motion to Dismiss Plaintiff's Amended Complaint."  This motion, incorporated by reference, was filed on behalf of defendants Wetzel, Witherite, Varner, Wenerowicz, Shaylor, Verosky, Lewis, Kryeski and Aguiar.

-42-

Therefore, because all defendants have responded to plaintiff's Second Amended Complaint, either directly, or by reference, in a timely fashion, entry of default is not appropriate against any defendant.

### CONCLUSION

For all the foregoing reasons, defendants' motion for leave to file a supplemental complaint is granted.

Defendants' motion to dismiss is granted in part and denied in part. Defendant's motion is granted to the extent that it seeks to dismiss Counts 7, 9, 14, 15, and 18. It is further granted to the extent it seeks to dismiss Count 17 with respect to defendants Bender, Everding, Terra, Spagnoletti, and Wenerowicz.  Defendant's motion to dismiss is denied in all other respects.

Finally, plaintiff's Request for Entry of Default is denied.