IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

OMAR SHERIEFF CASH,                         )
                                            )
                Plaintiff                   )
                                            )
        vs.                                 )
                                            )
JOHN E. WETZEL,                             )
   Secretary of Corrections;                )
JEFFREY WITHERITE,                          )  Civil Action
   Staff Assistant-Western Region;          )  No. 12-cv-05268
DORINDA VARNER,[1]                          )
   Chief Grievance Officer;                 )
MIKE WENEROWICZ,                            )
   Facility Manager                         )
   SCI Graterford;                          )
WENDY SHAYLOR,                              )
   Grievance Coordinator;                   )
VEROSKY, Lieutenant;                        )
LEWIS, Correctional Officer;                )
KRYESKI, Correctional Officer;              )
AGUIAR, Correctional Officer                )
T.J. DOHMAN,                                )
   Deputy Superintendent;                   )
J.W. SPAGNOLETTI, Captain;                  )
JOSEPH TERRA, Unit Manager;                 )
BENDER, Lieutenant;                         )
COX, Lieutenant;                            )
EVERDING, Lieutenant;                       )
MOYER, Correctional Officer;                )
FINA, Correctional Officer;                 )
CURRAN, Correctional Officer;               )
RIVERA, Correctional officer;               )
HALL, Correctional officer; and             )
MELISSA SMITH,                              )
                                            )
                Defendants                  )

---

[1]     In plaintiff's initial 42 U.S.C. § 1983 Civil Rights Complaint
and first Amended Complaint, he identifies Dorina Yarner as a defendant.
(Documents 5 and 15).  In his Supplemental Complaint, he identifies Dorina
Varner as a defendant.  (Document 47).  In plaintiff's second and third
Amended Complaints and his Consolidated Amended and Supplemental Complaint,
he names Dorinda Varner as a defendant.  (Documents 33, 60, 64).

APPEARANCES:

                OMAR SHERIEFF CASH
                     Pro Se

                KATHY LE, Deputy Attorney General
                     On behalf of Defendants

                      O P I N I O N

JAMES KNOLL GARDNER
United States District Judge

          This matter is before the court on the Consolidated

Amended and Supplemental Complaint filed by plaintiff Omar

Sherieff Cash pro se on March 18, 2015[2] and defendants' Motion to

Dismiss the Third Amended Complaint ("Motion to Dismiss"), which

motion was filed November 18, 2015.[3]

          By Order dated and filed November 3, 2015,[4] I directed

defendants to respond to the Consolidated Amended and Supplemen-

tal Complaint by November 17, 2015. Consequently, on November 18,

2015, defendants also filed a Motion for Extension of Time in

Which to Respond to Plaintiff's Consolidated Amended and

Supplemental Complaint ("Motion to Accept Late Filing").[5]

---

[2]      Document 64.

[3]      Document 74.

[4]      Document 72.

[5]      Document 75.

On November 16, 2015, plaintiff filed a Motion in Opposition to Defendant's [sic] Motion to Dismiss.[6]  On December 14, 2015, plaintiff filed an Amended Motion in Opposition to Defendant's Motion to Dismiss.[7]

I grant defendants' Motion to Accept Late Filing as unopposed.  For the following reasons, I grant in part and deny in part defendants' Motion to Dismiss.  I grant the Motion to Dismiss to the extent each defendant is sued in his official capacity.  I further grant the Motion to Dismiss to the extent it seeks dismissal of Counts 1 through 5 and 7 through 9.[8]  I dismiss Count 6 with respect to defendants Kryeski, Correctional Officer; Patrick Curran; and Ephrain Rivera; but not defendants Thomas Dohman; Jeffrey Bender; Brian Moyer; Patrick Fina; or Isaiah Hall.

<u>JURISDICTION</u>

Jurisdiction is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331.  Plaintiff brings claims under 42 U.S.C. § 1983 for violations of the First,

---

[6]     (Document 73).  This response was filed before defendants filed their Motion to Dismiss. Plaintiff re-filed an identical motion on November 20, 2015.  (Document 76).

[7]     Document 78.

[8]     For ease of reference, I assign the following count numbers: Count 1 constitutes the claims listed in paragraph 121; paragraph 122 is Count 2; paragraph 123 is Count 3; paragraph 124 is Count 4; paragraph 125 is Count 5; paragraph 126 is Count 6; paragraph 127 is Count 7; paragraph 128 is Count 8; and paragraph 129 is Count 9.

Sixth, Eighth, and Fourteenth Amendments to the United States
Constitution.

## VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b)
because the events giving rise to these claims occurred in
Montgomery County, Pennsylvania, which is located in this
judicial district.  See 28 U.S.C. §§ 118, 1391(b).

## PROCEDURAL HISTORY

On September 13, 2012, plaintiff filed an Application
for In Forma Pauperis,[9] which was denied by Order dated and filed
September 17, 2012.[10]  On October 17, 2012 plaintiff filed an
amended pro se Motion for Leave to Proceed In Forma Pauperis.[11]
By Order dated and filed October 22, 2012[12] I granted plaintiff's
motion and directed the Clerk of Court to file plaintiff's
Complaint.  The Complaint was filed on October 22, 2012.[13]

_____

[9]     Document 1.

[10]    Document 2.

[11]    Document 3.

[12]    Document 4.  The initial Complaint names as defendants John
Wetzel, Secretary of Corrections; Jeffrey Witherite, Staff Assistant –
Western Region; Dorina Yarner, Chief Grievance Officer; Mike Wenerowicz,
Facility Manager, SCI Graterford; Wendy Shaylor, Grievance Coordinator;
E. Verosky, Lieutenant; Lewis, Seargent [sic]; Kryeski, Correctional Officer;
and Aguiar, Correctional Officer.  See (Document 5).

[13]    Document 5.

-4-

On November 9, 2012 plaintiff filed a Motion for Leave to File an Amended Complaint.[14]  By Order dated December 20, 2012 and filed December 21, 2012[15] I granted plaintiff's motion as unopposed and ordered the Clerk of Court to file plaintiff's Amended Complaint and attached exhibits.  The Amended Complaint was filed on December 21, 2012.[16]

On January 4, 2013 defendants filed Commonwealth Defendants' Motion to Dismiss the Amended Complaint.[17]  On January 14, 2013, plaintiff filed a Motion for Leave to File an Amended Complaint.[18]  By Order dated and filed July 22, 2013,[19] I granted plaintiff's Motion for Leave to File an Amended Complaint and dismissed as moot Commonwealth Defendants' Motion to Dismiss the Amended Complaint.  Accordingly, on July 22, 2013, the Clerk of Court filed plaintiff's second Amended Complaint.[20]

On August 12, 2013, plaintiff filed a Supplemental Complaint Notice,[21] requesting leave of court to file a

---

[14]     Document 11.

[15]     Document 14.

[16]     Document 15.

[17]     Document 16.

[18]     Document 20.

[19]     Document 32.

[20]     Document 33.

[21]     Document 35.

Supplemental Complaint.  On August 23, 2013, defendants filed Commonwealth Defendants' Motion to Dismiss the Second Amended Complaint,[22] with respect to the second Amended Complaint filed on July 22, 2013.

By Opinion and Order dated March 26, 2014,[23] I granted plaintiff's request to file a Supplemental Complaint.  I also granted in part and denied in part Commonwealth Defendants' Motion to Dismiss the Second Amended Complaint.  Specifically, I dismissed Counts 7, 9, 14, 15, and 18 of the second Amended Complaint and dismissed Count 17 against defendants Mike Wenerowicz, Facilities Manager, SCI Graterford; John Spagno- letti; Joseph Terra; Jeffrey Bender; and John Everding.  On March 26, 2014, in accordance with the Opinion and Order, the Clerk of Court filed plaintiff's Supplemental Complaint.[24]

On April 21, 2014, defendants filed Commonwealth Defendants' Answer and Affirmative Defenses to the Second Amended Complaint and Supplemental Complaint.[25]

---

[22]     Document 37.

[23]     Documents 45 and 46.

[24]     Document 47.  The Supplemental Complaint lists the same defendants as the initial Complaint, first Amended Complaint, and second Amended Complaint.  It also lists the following additional defendants: T.J. Dohmad, J.W. Spagnoletti, Lt. Bender, Lt. Cox, Lt. Everding, Corrections Officer Moyer, C.O. Curran, C.O. Fina, C.O. Rivera, C.O. Hall, and John/Jane Doe employee of the Pennsylvania Department of Corrections also referred to as Mail Inspector #6.

[25]     Document 49.

On November 12, 2014 plaintiff filed a third Amended Complaint.[26] By Rule 16 Status Conference Order dated November 17, 2014 and filed November 26, 2014,[27] plaintiff's third Amended Complaint was stricken and he was given twenty-one days to file a motion for leave to file his third Amended Complaint.  Accordingly, on December 8, 2014, plaintiff filed a Motion for Leave to File a Consolidated Amended and Supplemental Complaint,[28] which motion was granted by Order dated March 17, 2015 and filed March 18, 2015.[29]

On March 18, 2015, the Clerk of Court filed plaintiff's Consolidated Amended and Supplemental Complaint, which is now before the court.[30]  On November 18, 2015, defendants filed their within Motion to Dismiss.[31]

<u>STANDARD OF REVIEW</u>

<u>Motion to Dismiss</u>

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which

---

[26]   Document 60.

[27]   Document 61.

[28]   Document 62.

[29]   Document 63.

[30]   Document 64.  The Consolidated Amended and Supplemental Complaint lists the same defendants as the Supplemental Complaint and also identifies the John/Jane Doe from the Supplemental Complaint as Melissa Smith.

[31]   Document 74.  Defendants also filed a Motion to Dismiss the Third Amended Complaint on April 30, 2015 (Document 66), which was stricken by Order dated August 17, 2015 and filed August 18, 2015 (Document 67) because it failed to respond to the Consolidated Amended and Supplemental Complaint.

relief can be granted."  A Rule 12(b)(6) motion requires the court to examine the sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957) (abrogated in other respects by Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Generally, in ruling on a motion to dismiss, the court relies on the complaint, exhibits attached to the complaint, and matters of public record, including other judicial proceedings. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2008).

Except as provided in Federal Rule of Civil Procedure 9, a complaint is sufficient if it complies with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief". Rule 8(a)(2) does not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.  Twombly, 550 U.S. at 570, 127 S.Ct. at 1974, 167 L.Ed.2d at 949.[32]

In determining whether a complaint is sufficient, the court must accept all factual allegations as true, construe the complaint in the light most favorable to plaintiff, and

---

[32]     The United States Supreme Court's Opinion in Ashcroft v. Iqbal, 556 U.S. 662, 684, 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868, 887 (2009), states clearly that the "facial plausibility" pleading standard set forth in Twombly applies to all civil suits in the federal courts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  This showing of facial plausibility then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged", and that plaintiff is entitled to relief. Fowler, 578 F.3d at 210 (quoting Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949, 173 L.Ed.2d at 884).

determine whether, under any reasonable reading, plaintiff may be entitled to relief.  Fowler, 578 F.3d at 210 (citing Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).

Although "conclusory" or "bare-bones allegations" will not survive a motion to dismiss, Fowler, 578 F.3d at 210, a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits.  Phillips, 515 F.3d at 231. Nonetheless, to survive a Rule 12(b)(6) motion, the complaint must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Id. at 234 (quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940) (internal quotations omitted).

The court is required to conduct a two-part analysis when considering a Rule 12(b)(6) motion.  First, the factual matters averred in the complaint, and any attached exhibits, should be separated from legal conclusions asserted.  Fowler, 578 F.3d at 210.  Any facts pled must be taken as true, and any legal conclusions asserted may be disregarded.  Id. at 210-211.

Second, the court must determine whether those factual matters averred are sufficient to show that the plaintiff has a "plausible claim for relief."  Id. at 211 (quoting Iqbal, 556 U.S. at 679, 129 S.Ct. at 1950, 178 L.Ed.2d at 884).

Ultimately, this two-part analysis is "context-specific" and requires the court to draw on "its judicial experience and common sense" to determine if the facts pled in the complaint have "nudged [plaintiff's] claims" over the line from "[merely] conceivable [or possible] to plausible."  Iqbal, 556 U.S. at 679-680, 129 S.Ct. at 1949-1951, 178 L.Ed.2d at 884-885.

A well-pled complaint may not be dismissed simply because "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."  Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940-941 (internal quotations omitted).

<u>FACTS</u>

Based upon the averments in plaintiff's Consolidated Amended and Supplemental Complaint, which I must accept as true under the applicable standard of review discussed above, the pertinent facts are as follows.

Plaintiff is a prisoner in the custody of the Pennsylvania Department of Corrections.[33]  Defendants are all employed by the Pennsylvania Department of Corrections.[34]

On May 26, 2011, plaintiff was temporarily transferred from the State Correctional Institution at Albion, Pennsylvania

---

[33]    Consolidated Amended and Supplemental Complaint ("CASC") at 3.

[34]    Id. at ¶¶ 4-24.

("SCI Albion") to the State Correctional Institution at Grater-
ford, Pennsylvania ("SCI Graterford") to appear at a pre-trial
hearing for a capital offense case in Philadelphia County,
Pennsylvania.[35]  Plaintiff had previously been convicted of a
separate offense in Bucks County, Pennsylvania for which he was
serving a life sentence, which was on direct appeal.[36]  While at
SCI Graterford, plaintiff was in administrative segregation and
was housed on the death row unit, J-Unit.[37]

On June 24, 2011, defendants Correctional Officers
("C.O.") Lewis and Aguiar handcuffed plaintiff and escorted him
to L-Unit without prior notice of the change in his bed
assignment.[38]  Upon arriving at L-Unit, plaintiff was strip
searched and placed in a cell.[39]

After transferring plaintiff to L-Unit, defendants
Aguiar and Lewis returned to plaintiff's prior cell on J-Unit.[40]
Defendant Lewis threw plaintiff's property into the trash,
including legal materials and trial transcripts, and stated,
"These fuckin' rapist[s] and murder[er]s all belong in jail,

---

[35]    CASC at ¶ 26.

[36]    Id. at ¶ 35.

[37]    Id. at ¶¶ 27, 28.

[38]    Id. at ¶¶ 29-31.

[39]    Id. at ¶ 32.

[40]    Id. at ¶ 33.

forever.  They don't need appeals of trials."[41]  Meanwhile, defendant Aguiar laughed and ate plaintiff's commissary items.[42] Defendant Lieutenant Verosky approached and asked defendants Aguiar and Lewis what they were doing, to which defendant Lewis replied that he was throwing out the trash.[43]  Defendant Verosky said, "Good, he don't need it," and all of the officers laughed.[44]

After the change in his housing from J-Unit to L-Unit, plaintiff's property was not transferred to him, including notarized affidavits from witnesses in his pending Philadelphia County capital case in which he was representing himself; discovery in his pending capital case; trial transcripts from his Bucks County case that was on direct appeal; and $52.00 worth of commissary items.[45]  The affiant of one of the missing affidavits was a man who had since died.[46]

Later the same day, defendant Lewis handed a manila envelope containing legal documents belonging to plaintiff to

---

[41]    CASC at ¶ 33.

[42]    Id.

[43]    Id.

[44]    Id.

[45]    Id. at ¶ 34.

[46]    Id.

another inmate.[47]   The inmate informed defendant Lewis that the documents did not belong to him, to which defendant Lewis responded, "Just throw them away.  He's an animal and he's never getting out.  If it's up to me.  Fuck him!  Somebody needs to kill his ass."[48]   The documents were items that plaintiff provided to non-party Sargent Kline on June 14, 2011 for the purposes of copying, but which were never returned to him.[49]   On May 6, 2013, fifteen pages of these legal documents were discovered in another inmate's cell during a cell search.[50]

On June 30, 2011, plaintiff was transported back to SCI Albion, without his missing property.[51]   On July 7, 2011, plaintiff met with the Program Review Committee at SCI Albion and informed them that his property was missing, which was inhibiting him from preparing for trial.[52]   On June 25, 2011, he filed a grievance related to the events of June 24, 2011, which was denied.[53]   Plaintiff subsequently decided to obtain counsel

---

[47]     CASC at ¶ 33(a).

[48]     Id. at ¶¶ 33(b), 33(c).

[49]     Id. at ¶ 33(d).

[50]     Id.

[51]     Id. at ¶ 37.

[52]     Id. at ¶ 38.

[53]     Id. at ¶ 40.

to represent him in his pending Philadelphia County capital case because of the loss of his legal materials.[54]

On December 14, 2011, plaintiff's direct appeal of his Bucks County conviction was denied.[55]  He thereafter filed a pro se Petition for Post-Conviction Collateral Relief ("PCRA") in an attempt to notify the court of his inability to actively participate in the PCRA proceedings because of the destruction of his trial transcripts.[56]  On August 14, 2012, plaintiff obtained counsel to represent him in his PCRA proceedings.[57]

On August 25, 2012, plaintiff's former attorney in his Bucks County case, Michael Goodwin, sent letters to defendants Department of Corrections Secretary Wetzel and SCI Graterford Superintendent Wenerowicz requesting that plaintiff's trial transcripts be returned or that funds be provided to purchase new copies.[58]

On September 13, 2012, plaintiff commenced the instant action.[59]

---

[54]   CASC at ¶ 40.

[55]   Id. at ¶ 41.

[56]   Id. at ¶ 42, Exhibit J.

[57]   Id. at ¶ 42.

[58]   Id. at ¶ 76; see also Amended Complaint, Exhibits I(1), I(2) (Document 33).

[59]   CASC at ¶ 43; see also Application for In Forma Pauperis (Document 1).  Plaintiff erroneously alleges that he commenced this action on

(Footnote 59 continued):

On January 15, 2013, plaintiff was again transferred from SCI Albion to SCI Graterford to attend a PCRA hearing in Bucks County.[60]  Upon arrival, he was placed in administrative segregation.[61]  Plaintiff's housing assignment was later changed and, after the transfer, he noticed that his cosmetic items and a book were missing.[62]  He inquired about the missing items and defendant Sargent Moyer told him, "We (officers) can do anything we want to you until you drop that lawsuit, because you pissed-off the higher-ups."[63]

On January 22, 2013, plaintiff received a letter from his attorney in his pending Philadelphia County capital case, which had been forwarded from SCI Albion to SCI Graterford.[64] The letter, which informed plaintiff that the prosecution was offering a sentence of life imprisonment in exchange for a

---

(Continuation of footnote 59):

October 22, 2012, the date his first Complaint was filed by the Clerk of Court as directed by my Order dated and filed October 22, 2012 (Document 4). CASC at ¶ 42; Document 5.

Plaintiff in fact initiated this action by filing an Application for In Forma Pauperis on September 13, 2012.  (Document 1).  As discussed in the procedural history section, plaintiff subsequently filed several amended pleadings.

[60]     CASC at ¶ 44.

[61]     Id. at ¶ 45.

[62]     Id. ¶ 46.

[63]     Id.  Although plaintiff names defendant Moyer as a Correctional Officer in paragraph 17 of the Consolidated Amended and Supplemental Complaint, he refers to him as "Sgt. Moyer" in paragraph 46.

[64]     Id. at ¶ 48.

guilty plea, had been opened outside of his presence by
defendant Smith.[65]   The same day, plaintiff filed a grievance
regarding this incident.[66]

On January 23, 2013, plaintiff was reviewed by SCI
Graterford's Program Review Committee, at which time he
requested approval for a personal phone call and a legal phone
call, to which defendant Deputy Dohman replied, "Stop filing
lawsuits and you'll get your phone calls."[67]   The same day,
plaintiff filed a grievance regarding this incident.[68]

On January 24, 2013, plaintiff was moved to death
row.[69]   He asked why he was being moved, and defendant C.O. Rivera
stated, "You better take that plea deal or you'll be over there
permanently."[70]

On January 24, 2013, plaintiff received another letter
from his attorney informing him of the plea bargain being
offered by the prosecution.[71]   This letter was sent directly to
SCI Graterford and was also opened outside of plaintiff's

---

[65]     CASC at ¶ 48.

[66]     Id. at ¶ 78, Exhibit M1(a).

[67]     Id. at ¶ 49.

[68]     Id. at ¶ 79, Exhibit N-1.

[69]     Id. at ¶ 50.

[70]     Id.

[71]     Id. at ¶ 51, Exhibit P1(a).

presence by defendant Smith.[72]  On January 24, 2013, plaintiff filed a grievance regarding the incidents that occurred that day.[73]

Plaintiff's PCRA hearing was rescheduled and he was transferred back to SCI Albion.[74]  On March 21, 2013, he was again transferred to SCI Graterford for his PCRA hearing.[75] Plaintiff was again placed in administrative segregation and housed on death row.[76]

On March 21, 2013, plaintiff was strip searched by defendant C.O. Hall prior to leaving his cell to go to the law library.[77]  Defendant Hall made "several derogatory sexual innuendos" to plaintiff and instructed plaintiff to "squeeze his penis and perform other sexually provocative acts."[78]  Plaintiff requested to use the sex abuse hotline, to which defendant Hall responded, "File another lawsuit!"[79]  The same day, plaintiff filed a grievance.[80]

---

[72]   CASC at ¶ 51.

[73]   Id. at ¶ 80, Exhibit O-1.

[74]   Id. at ¶ 52.

[75]   Id.

[76]   Id. at ¶ 53.

[77]   Id. at ¶ 55.

[78]   Id.

[79]   Id.

[80]   Id. at ¶ 86.

On March 25, 2013, defendant C.O. Fina approached plaintiff and informed him he would be transferred back to SCI Albion the following day and therefore plaintiff's property had to be collected.[81]   Plaintiff requested that his property be inventoried, to which defendant Fina replied, "I could throw all this shit away just like we did before and nothing[']s gonna happen just like nothing happened before.  Go ahead and file another lawsuit, that's all your [sic] gonna do."[82]   The same day, plaintiff filed a grievance.[83]

On March 26, 2013, plaintiff was not transferred back to SCI Albion as he had been told he would, nor was his property returned to him.[84]   Plaintiff filed a grievance.[85]

On March 27, 2013, plaintiff observed his box of legal files on the J-Unit observation booth's desk with the lid off.[86] Plaintiff asked for his property to be returned to him because he was not transferred the previous day as expected.[87]   Defendant Lieutenant Bender replied, "You may have to file another lawsuit to get that stuff back.  All this trouble your [sic] going

---

[81]   CASC at ¶ 56.

[82]   Id.

[83]   Id. at ¶ 87, Exhibit P-4(a).

[84]   Id. at ¶ 57.

[85]   Id. at ¶ 88, Exhibit P-5(a).

[86]   Id. at ¶ 58.

[87]   Id.

through could easily go away if you would just drop the lawsuit."[88]

On March 28, 2013, plaintiff returned to SCI Albion.[89] On April 11, 2013, he was transferred back to SCI Graterford to meet with his attorneys in his pending Philadelphia County capital case.[90]  He was again placed in administrative segregation and housed on death row.[91]  His legal materials were placed in his cell prior to his arrival.[92]  Upon review of the materials, he discovered that his "mitigation evidence" was missing.[93]

On April 12, 2013, plaintiff requested that defendant Bender instruct defendant C.O. Kryeski to return plaintiff's mitigation evidence to him.[94]  On April 18, 2013, plaintiff was reviewed by the Program Review Committee at SCI Graterford, at which time plaintiff requested that his mitigation evidence and cosmetic items be returned to him.[95]  Defendant Dohman stated,

---

[88]    CASC at ¶ 58.

[89]    Id. at ¶ 59.

[90]    Id. at ¶ 60.

[91]    Id. at ¶ 61.

[92]    Id. at ¶ 62.

[93]    Id.

[94]    Id. at ¶ 89.

[95]    Id. at ¶ 64.

"We're lazy, we don't have time to satisfy every temp transfer. Just buy new cosmetics."[96]

On April 29, 2013, plaintiff was transported to the Criminal Justice Center in Philadelphia to meet with counsel in his Philadelphia County case regarding the penalty phase of his trial.[97]  Prior to the transfer, plaintiff asked defendant Terra, the J-Unit manager, to provide him with his mitigation evidence.[98]  Defendant Terra responded, "Stop bitchin!"[99]

Plaintiff was found guilty in his Philadelphia County case and on November 15, 2013 he was sentenced to death by lethal injection.[100]

On September 18, 2014, plaintiff was transferred from the State Correctional Institution at Greene, Pennsylvania ("SCI Greene") to SCI Graterford to attend a PCRA hearing in his Bucks County case.[101]  On September 27, 2014, he requested to use the law library.[102]  Another inmate, Harold Murray, informed plaintiff that he would not go to the law library during his

---

[96]    CASC at ¶ 64.

[97]    Id. at ¶ 66.

[98]    Id.

[99]    Id.

[100]   Id. at ¶ 66(a), Exhibit Y.

[101]   Id. at ¶ 66(e).

[102]   Id.

scheduled time slot and that plaintiff could take his slot.[103]
Defendant Aguiar learned of the arrangement between plaintiff
and Mr. Murray and terminated plaintiff's law library usage.[104]
Mr. Murray spoke with defendant Aguiar and informed him that he
was yielding his law library time slot to plaintiff, to which
defendant Aguiar responded, "Who[,] Cash?  I can't let him use
the law library, that guy is suing the shit out of me!"[105]

On December 26, 2014, plaintiff was transferred from
SCI Greene to SCI Graterford.[106]  Upon arrival, he was seen by a
nurse, who reported that plaintiff had elevated blood pressure
and instructed plaintiff to notify correctional officers if he
became symptomatic.[107]

Plaintiff later began to have severe chest pains and
he notified correctional officers.[108]  Non-party Lieutenant
Dunlap and two unidentified correctional officers escorted
plaintiff to the medical department where he was examined by a

---

[103]   CASC at ¶ 66(e).

[104]   Id. at ¶ 66(f).

[105]   Id.

[106]   Id. at ¶ 66(b).

[107]   Id.

[108]   Id. at ¶ 66(d).

nurse.[109]  Afterwards, he was stripped and placed in the "hard cell" on suicide watch.[110]

Plaintiff asked why he was being placed on suicide watch, to which the officers responded, "This is what filing [a] lawsuit [will] get you!"[111]

As noted throughout, plaintiff filed grievances regarding each of the incidents alleged in his complaint, all of which were ultimately unsuccessful.[112]  He also voiced his complaints with prison officials through other means, including notifying the Program Review Committees at SCI Albion and SCI Graterford; sending letters and having his lawyer send letters to prison officials; submitting Forms DC-135A, Inmate's Request to Staff Member; and personally speaking with officials.[113]

<u>DISCUSSION</u>

<u>All Claims Against Defendants in Their Official Capacities Are Dismissed</u>

Plaintiff's Consolidated Amended and Supplemental Complaint names all defendants in both their individual and

---

[109]     CASC at ¶ 66(d).

[110]     <u>Id.</u>

[111]     <u>Id.</u>

[112]     <u>Id.</u> at ¶¶ 67, 69-73, 77-82, 86-88, 94, 96-98, 100-101, 107, 110, 111, 115, 116, 118-120.

[113]     <u>Id.</u> at ¶¶ 68, 74-76, 83-85, 89-93, 95, 99, 103-106, 108, 109, 112-114, 117.

official capacities.[114]  All claims against defendants in their official capacities are dismissed from the Amended and Supplemental Complaint.

The Eleventh Amendment bars federal lawsuits by private parties against states, state agencies, and state officials in their official capacities, including "suits invoking the federal-question jurisdiction of Article III". Idaho v. Coeur D'Alene Tribe of Idaho, 521 U.S. 261, 268, 117 S.Ct. 2028, 2033, 138 L.Ed.2d 438 (1997).  Even if the state is not named as a party, "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." Edalman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.E.2d 662 (1974).  Immunity applies "[w]hen suit is commenced against state officials, even if they are named and served as individuals". Idaho, 521 U.S. at 269, 117 S.Ct. at 2034, 138 L.Ed.2d at 447.

States can waive their Eleventh Amendment immunity, but Pennsylvania has explicitly not done so. 42 Pa.C.S. § 8521(b). Moreover, Section 1983 fails to have the requisite effect of overcoming Eleventh Amendment immunity.  See Quern v. Jordan, 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358, 367 (1979).

---

[114]    CASC at ¶ 25.

In this case, all defendants have been sued in connection with their employment by the Pennsylvania Department of Corrections.  Therefore, because "the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants."  Ford Motor Co. v. Department of Treasury of State of Indiana, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945), overruled on other grounds by Lapides v. Board of Regents of University System of Georgia, 535 U.S. 613, 122 S.Ct. 1640 (2002); see also Lavia v. Pennsylvania Department of Corrections, 224 F.3d 190 (3d Cir. 2000) (finding Pennsylvania Department of Corrections immune from suit under the Eleventh Amendment).  Accordingly, to the extent defendants are sued in their official capacities, they are immune from suit.

Furthermore, claims against state agencies and state officials in their official capacities under 42 U.S.C. § 1983 are precluded because such parties do not constitute "persons" subject to liability under § 1983. See Hafer v. Melo, 502 U.S. 21, 25-27, 112 S.Ct. 358, 361-362 (1991).  For the foregoing reasons, all claims against the defendants in their official capacities are dismissed.

<u>Claims Against Defendants in Their Individual Capacities</u>

<u>Count 1</u>

Count 1 of plaintiff's Consolidated Amended and Supplemental Complaint challenges SCI Graterford's housing policies responsible for plaintiff being placed in administrative segregation and housed on death row while there.  He names defendants Wetzel and Wenerowicz for their roles in creating and implementing the relevant policies.[115]  Plaintiff alleges that this housing policy "stripped [him] of his presumption of innocence" in violation of the Fourteenth Amendment because he had not yet been sentenced to death.[116]

The presumption of innocence is the right a criminal defendant has "to have his guilt or innocence determined solely on the basis of the evidence introduced at trial."  <u>Taylor v. Kentucky</u>, 436 U.S. 478, 485, 98 S.Ct. 1930, 1934, 56 L.Ed.2d 468, 474-475 (1978). It pertains to "the fairness of the fact-finding process." <u>Estelle v. Williams</u>, 425 U.S. 501, 503, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126, 130 (1976).

The presumption of innocence, therefore, is a right which is observed during a criminal trial, and it has no relevancy to the conditions of a pre-trial detainee's housing. Plaintiff does not allege, for example, that the jury in his

---

[115]    CASC at ¶ 121.

[116]    <u>Id.</u>

criminal trial was aware that he was placed in administrative segregation or on death row and that this damaged his presumption of innocence during trial.

Furthermore, due process is not implicated by the conditions of a prisoner's housing unless the arrangement "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418, 430 (1995).  Plaintiff has not alleged how his housing posed an atypical or significant hardship.

Moreover, prisoners generally have no liberty interest with respect to their housing unless prison policies create such an interest.  Sandin, 515 U.S. at 483-484, 115 S.Ct. at 2300, 132 L.Ed.2d at 429-430.  However, plaintiff does not allege that the prison failed to comply with its own policies.  Rather, he states that his housing placement was "pursuant to Department of Corrections' policy DC-ADM-802."[117]

Even if the prison had departed from its own policies, it would not necessarily signify a constitutional violation. See Williams v. Wetzel, No. 12-cv-00944, 2014 WL 252020 at *4

_____

[117]   CASC at ¶ 27.  This policy provides: "It is the policy of the Department to place an inmate in [Administrative Custody] status whose presence in general population would constitute a threat to life, property, himself/herself, staff, other inmates, the public, or the secure or orderly running of the facility."  Policy Statement, Commonwealth of Pennsylvania, Department of Corrections, DC-ADM 802 (Nov. 24, 2014), available at http://www.cor.pa.gov/Administration/Documents/DOC%20Policies/802%20Administrative%20Custody%20Procedures.pdf.

(W.D.Pa. 2014) (collecting cases).  Furthermore, under Pennsylvania law, "[a]n inmate does not have a right to be housed in a particular facility or in a particular area within a facility."  37 Pa.Code. § 93.11.

Accordingly, plaintiff has failed to state a claim against defendants Wetzel and Wenerowicz regarding his housing assignment at SCI Graterford.

<u>Count 2</u>

Count 2 of plaintiff's Consolidated Amended and Supplemental Complaint brings claims under the First, Sixth, and Fourteenth Amendments and the Equal Protection Clause based upon the actions of defendants E. Verosky, Lieutenant; Lewis, Sargent; and Aguiar, Correctional Officer in withholding or destroying plaintiff's legal files and trial transcripts.[118] Plaintiff argues that this conduct denied him access to the courts.  He seeks damages as well as the vacatur of his criminal conviction and death sentence in Philadelphia County and a bar against further prosecution.[119]

The United States Supreme Court has explained that there are two types of "denial of access to the courts" claims. See <u>Christopher v. Harbury</u>, 536 U.S. 403, 412-414, 122 S.Ct. 2179, 2185-2186, 153 L.Ed.2d 413, 423-424 (2002).  First, there are

---

[118]    CASC at ¶ 122.

[119]    <u>Id.</u> at ¶ 131.

-27-

claims that involve some temporary frustration of ongoing litigation, but "[t]he opportunity [to litigate] has not been lost for all time."  Id. at 413, 2185-2186, 423.  Second, there are claims that look "backward to a time when specific litigation ended poorly."  Id. at 414, 2186, 423-424.

Plaintiff's claim primarily falls into the second category.  Specifically, he complains that, as a result of the actions of defendants Verosky, Lewis, and Aguiar, he was wrongfully convicted of one criminal offense and was unsuccessful in his appeal of another offense.

Plaintiff's claim is barred, however, because he has failed "to state a claim upon which relief can be granted".  Fed.R.Civ.P. 12(b)(6).  The Supreme Court has held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

Heck v. Humphries, 512 U.S. 477, 487, 114 S.Ct. 2364, 2372, 129 L.Ed.2d 383 (1994).

Granting damages or the requested injunction would undermine the validity of plaintiff's criminal conviction.  The proper method for plaintiff to challenge his convictions or

sentences is through direct and collateral appeals, including a motion for writ of habeas corpus under 28 U.S.C. § 2254.

Plaintiff also brings a claim that falls under the first category.  Plaintiff alleged that defendant Aguiar denied him time in the law library to prevent him from working on the present action.[120]  To the extent plaintiff complains of a denial of access to the courts based upon this incident, it falls into the first category of claims because the current matter is still ongoing.  See Christopher, 536 U.S. at 414, 122 S.Ct. at 2186, 153 L.Ed.2d at 423-424.

To state a claim for denial of his right to access the courts plaintiff must allege that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived him of right of access to the courts. Muhammad v. Hilbert, 906 F.Supp. 267, 270 (E.D.Pa. 1995) (Brodie, J.).  "[T]o pursue a claim of denial of access to the courts an inmate must allege actual injury, such as the loss or rejection of a legal claim."  Oliver v. Fauver, 118 F.3d 175, 177 (3d Cir. 1997) (citing Lewis v. Casey, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)).

Here, defendant Aguiar was acting under color of state law because the incident occurred in connection with his employment with the Pennsylvania Department of Corrections.  See

---

[120]    CASC at ¶ 66(f).

Parratt v. Taylor, 451 U.S. 527, 535-536, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420, 429 (1981).  However, plaintiff has not alleged any injury which resulted from the one-time denial of his request to use the law library.  Oliver, 118 F.3d at 177.  For the foregoing reasons, Count 2 is dismissed.

### Count 3

Count 3 of plaintiff's Consolidated Amended and Supplemental Complaint raises a claim against defendants Verosky and Aguiar for their inaction while witnessing the conduct of defendant Lewis.  This claim is barred for the same reason articulated with respect to Count 2.  See Heck, 512 U.S. at 487, 114 S.Ct. at 2372, 129 L.Ed.2d 383 (1994).  Accordingly, this claim is dismissed.

### Count 4

Count 4 of plaintiff's Consolidated Amended and Supplemental Complaint brings claims under the First, Sixth, Eighth, and Fourteenth Amendments based on the denial of plaintiff's grievances, which he alleges involved fraud, conspiracy, and deliberate indifference.  Plaintiff brings this claim against defendants Wetzel, Witherite, Varner, Wenerowicz, Shaylor, Verosky, Lewis, Kryeski, and Aguiar.[121]

The claims against these nine defendants fail because plaintiff failed to allege sufficient facts.  He has alleged no

---

[121]     CASC at ¶ 124.

facts which would support a claim that these defendants were involved in any fraud or conspiracy related to the denial of his grievances.  The fact that the ultimate disposition of plaintiff's grievances was unfavorable to him does not demonstrate that any fraud, conspiracy, or falsification occurred.

Plaintiff's claims against defendants Wetzel, Witherite, Varner, Wenerowicz, and Shaylor also fail for a separate reason.  To the extent that plaintiff brings claims against these defendants based upon their review of his grievances, letters, or formal requests, he relies upon a theory of respondeat superior which cannot be used to support an action under § 1983.  These defendants had no personal involvement in the underlying allegedly constitutionally violative conduct. The involvement of each is only by virtue of their positions within the Department of Corrections or SCI Graterford.

Although the Eleventh Amendment bars suits against state officials in their official capacity, an exception exists for certain suits against state officials in their individual capacities.  Idaho, 521 U.S. at 269, 117 S.Ct. at 2034; Melo v. Hafer, 912 F.2d 628, 635-636 (3d Cir. 1990).  However, a government official named in his or her individual capacity is only liable in a § 1983 action if the official was personally involved in the conduct constituting a constitutional violation.

"[L]iability cannot be predicated solely on the operation of respondeat superior."  <u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005); <u>see also</u> <u>Gay v. Petsock</u>, 917 F.2d 768, 771 (3d Cir. 1990) which upheld dismissal of a claim against a prison Superintendent because the claim was predicated on respondeat superior.

Defendant John Wetzel is the Secretary of the Pennsylvania Department of Corrections.[122]  Plaintiff alleges that defendant Wetzel received letters from plaintiff and his attorney.[123]  Defendant Jeffrey Witherite is a staff assistant for the Pennsylvania Department of Corrections.[124]  Plaintiff alleges that defendant Witherite authored a letter in response to plaintiff's letter to defendant Wetzel.[125]

Defendant Dorinda Varner is the Chief Grievance Officer for the Pennsylvania Department of Corrections.[126]  Plaintiff alleges that she upheld the denial of several grievances which he appealed.[127]  Plaintiff also sent defendant

---

[122]   CASC at ¶ 4.

[123]   <u>Id.</u> at ¶¶ 74, 76.

[124]   <u>Id.</u> at ¶ 5.

[125]   <u>Id.</u> at ¶ 74.

[126]   <u>Id.</u> at ¶ 6.

[127]   <u>Id.</u> at ¶¶ 72, 73, 120.

Varner a letter regarding pending grievances.[128]  Defendant Wendy
Shaylor is the Grievance Coordinator at SCI Graterford.[129]
Plaintiff alleges that she denied several of his grievance
appeals.[130]

Defendant Mike Wenerowicz is the Superintendent of SCI
Graterford.[131]  Plaintiff alleges that Defendant Wenerowicz
denied plaintiff's grievance appeals, received a letter from
plaintiff's attorney, received formal requests from plaintiff to
respond to grievances and to direct the return of his property,
and spoke with plaintiff regarding his grievances.[132]

Plaintiff does not allege that defendants Wetzel,
Witherite, Varner, Wenerowicz, or Shaylor were "involved in the
acts complained of or that they were done with [their] knowledge
or acquiescence." Gay v. Petsock, 917 F.2d 768, 771 (3d Cir. 1990).
Although plaintiff's grievances and letters notified these
defendants of the events alleged in plaintiff's Consolidated
Amended and Supplemental Complaint, none of these defendants had
contemporaneous knowledge of the alleged conduct nor did they
acquiesce in it.

---

[128]    CASC at ¶ 84, Exhibit L-2(b).

[129]    Id. at ¶ 8.

[130]    Id. at ¶¶ 82, 99, 116, 117.

[131]    Id. at ¶ 7.

[132]    Id. at ¶¶ 70, 75, 81, 82, 85, 92, 95, 96, 98, 104, 108, 111, 118, 119.

To the extent that these defendants were allegedly involved in after-the-fact grievance reviews or received letters or formal requests related to the issues addressed in the grievances, this conduct does not constitute "personal involvement" that would subject these defendants to liability. See Brooks v. Beard, 167 Fed.Appx. 923, 925 (3d Cir. 2006). Rather, plaintiff's claims against each of them rests upon a theory of respondeat superior, which is not a proper basis for a § 1983 action.  Evancho, 423 F.3d at 353; see also Gay, 917 F.2d at 771.

Furthermore, "[i]nmates do not have a constitutionally protected right to the prison grievance process" and the existence of a grievance process does not thereby create any substantive right.  See Burnside v. Moser, 138 Fed.Appx. 414, 416 (3d Cir. 2005) (quoting Hoover v. Watson, 886 F.Supp. 410, 418 (D.Del. 1995)).  Failure of prison officials to address grievances does not constitute a violation of due process.  See Booth v. King, 346 F.Supp.2d 751, 761 (E.D.Pa. 2004) (Brody, J.).

In addition, it has been recognized that the Department of Corrections's grievance process "provid[es] adequate post-deprivation remedies to inmates in satisfaction of the Due Process Clause."  McEachin v. Beard, 319 F.Supp.2d 510,

514-515 (E.D.Pa. 2004) (Robreno, J.).  Accordingly, Count 4 is
dismissed.

### Count 5

Count 5 of the Consolidated Amended and Supplemental
Complaint brings claims under the First, Sixth, and Fourteenth
Amendments based upon the alleged inaction of defendants
Witherite and Varner and their failure to intervene in the
alleged conduct of defendants Wenerowicz, Verosky, Lewis,
Kryeski, and Aguiar.[133]  This claim presumably relates to the
actions of Witherite and Varner in reviewing plaintiff's
grievances and responding to his letters.

As noted above, individual liability in a § 1983
action must be based on personal involvement and cannot be
predicated upon respondeat superior.  Evancho, 423 F.3d at 353;
see also Gay, 917 F.2d at 771.  Plaintiff does not allege that
either defendant Witherite or Varner were personally involved in
the underlying allegedly constitutionally violative conduct or
had contemporaneous knowledge of it.  Accordingly, Count 5 is
dismissed.

### Count 6

Count 6 of the Consolidated Amended and Supplemental
Complaint brings claims under the First and Fourteenth Amend-
ments against defendants Kryeski, Dohman, Bender, Moyer, Fina,

---

[133]     CASC at ¶ 125.

-35-

Curran, Rivera, and Hall for their alleged retaliatory conduct.[134]

To prevail on a retaliation claim, plaintiff must demonstrate three things.  First, he must show that the conduct leading to the retaliation was constitutionally protected.  Rauser, 241 F.3d at 333.  Second, plaintiff must show that he suffered an adverse action by a prison official or other state actor.  Id.  Adverse action can be shown if the retaliatory conduct would deter a person of ordinary firmness from exercising the right.  Id.; see also Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000).  Third, plaintiff must show that the protected activity was a "substantial or motivating factor" in the state actor's decision to take the adverse action.  Rauser, 241 F.3d at 333-334.

If plaintiff satisfies those three factors, "the prison officials may still prevail by showing that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  Id. at 334.

The facts alleged in plaintiff's Consolidated Amended and Supplemental Complaint meet the first factor of the Rauser test.  The filing of a lawsuit is a constitutionally-protected action.  See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003);

---

[134]    CASC at ¶ 126.

Allah v. Seiverling, 220 F.3d 220, 225 (3d Cir. 2000); Mearin v. Vidonish, 450 Fed.Appx. 100, 102 (3d Cir. 2011).

With respect to the second Rauser factor, plaintiff has established that all of the defendants named in Count 6 are state actors.  All of these defendants are prison officials employed by the Pennsylvania Department of Corrections who are being sued in connection with their employment.

Plaintiff also satisfied the second portion of the second factor, which requires him to allege that the state actors took adverse action which would deter a person of ordinary firmness from exercising his constitutionally-protected right.

Plaintiff alleges that defendants engaged in the following conduct in retaliation for his initiating the instant action: they (1) withheld his mitigation evidence despite formal requests for its return;[135] (2) refused to inventory his property when it was taken from him;[136] (3) made sexual innuendos, asked him to engage in sexual conduct, and refused to allow him to use the sex abuse hotline;[137] (4) denied his request to make personal and legal phone calls;[138] (5) refused to return his property that

---

[135]    CASC at ¶¶ 63, 89-91, 103, 105, 106, 108, 112, 114.

[136]    Id. at ¶ 56.

[137]    Id. at ¶ 55.

[138]    Id. at ¶ 49.

had disappeared;[139] and (6) refused to return his property after his transfer to another correctional institution was delayed.[140]

The United States Court of Appeals for the Third Circuit has found that many of the deprivations plaintiff allegedly experienced would cumulatively constitute adverse action. See Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). In Allah, plaintiff was a prisoner who was allegedly transferred to administrative segregation in retaliation for filing civil lawsuits.  Id. at 221-222.  The change in custody status resulted in "reduced access to phone calls, reduced access to the commissary, reduced access to recreation, confinement in his cell for all but five hours per week, denial of access to rehabilitative programs and, significantly, inadequate access to legal research materials and assistance."  Id. at 225.

As in Allah, plaintiff alleges that he was denied phone calls and denied access to legal materials.  Plaintiff also alleges additional retaliatory conduct, including instructions to engage in sexual conduct with one defendant correctional officer.  These alleged acts would deter a person of ordinary firmness from exercising his constitutionally protected rights.

---

[139]     CASC at ¶ 46.

[140]     Id. at ¶ 58.

The third <u>Rauser</u> factor requires plaintiff to allege that the constitutionally-protected conduct was a substantial or motivating reason for the retaliation. <u>Rauser</u>, 241 F.3d at 333-334. He has alleged sufficient facts to meet this factor with respect to defendants Dohman, Bender, Moyer, Fina, and Hall, but has failed to do so with respect to defendants Kryeski, Curran, and Rivera.

Plaintiff alleges that defendants Kryeski and Curran were property room officers.[141] Plaintiff alleges that he submitted formal requests to defendants Wenerowicz, Spagnoletti, Terra, Bender, and Everding asking them to direct defendants Kryeski and Curran to return his missing mitigation evidence.[142] Despite these requests, plaintiff's mitigation evidence was not returned to him.[143] None of the allegations in the Consolidated Amended and Supplemental Complaint, however, indicates that defendants Kryeski or Curran intentionally withheld this property in retaliation.

Plaintiff alleges that defendant Rivera advised him to take a plea deal or else he would be housed on death row permanently.[144] Whether or not it was appropriate for defendant

---

[141]    CASC at ¶ 90.

[142]    <u>Id.</u> at ¶¶ 89-91, 103, 105, 106, 108, 112, 114.

[143]    <u>Id.</u> at ¶ 63.

[144]    <u>Id.</u> at ¶ 50.

Rivera to comment on this topic, his remark did not relate to plaintiff's lawsuit and does not establish that defendant Rivera had a retaliatory motive.

Plaintiff has alleged facts that establish a retaliatory motive with respect to the remaining defendants—Dohman, Bender, Moyer, Fina, and Hall.  Each of these defendants allegedly made some comment in connection with their actions which made clear that they were retaliating against plaintiff for filing this action.

Plaintiff alleges that defendant Dohman denied his request to make phone calls and stated, "Stop filing lawsuits and you'll get your phone calls."[145]

Plaintiff alleges that he requested that defendant Bender return his legal files after his transfer to another correctional institution was delayed, to which defendant Bender responded, "You may have to file another lawsuit to get that stuff back.  All this trouble your [sic] going through could easily go away if you would just drop the lawsuit."[146]

Plaintiff alleges that he inquired of defendant Moyer about some of his property that he believed to be missing.[147]  In response, defendant Moyer allegedly stated, "We (officers) can

---

[145]   CASC at ¶ 49.

[146]   Id. at ¶ 58.

[147]   Id. at ¶ 46.

do anything we want to you until you drop that lawsuit, because you pissed-off the higher-ups."[148]

Plaintiff alleges that defendant Fina refused to inventory his property and stated, "I could throw all this shit away just like we did before and nothing[']s gonna happen just like nothing happened before.  Go ahead and file another lawsuit, that's all your [sic] gonna do."[149]

Plaintiff alleges that defendant Hall made sexual comments to him, refused to allow him to use the sex abuse hotline, and told him to "File another lawsuit!"[150]

The aforementioned alleged comments of defendants Dohman, Bender, Moyer, Fina, and Hall establish that retaliation was a substantial or motivating factor for their conduct. Accordingly, Count 6 is dismissed against defendants Kryeski, Curran, and Rivera, but none of the other defendants named in Count 6.

### Count 7

Count 7 of the Consolidated Amended and Supplemental Complaint raises claims under the First, Eighth, and Fourteenth Amendments based on the inactions of defendants Varner, Wenerowicz, Shaylor, Kryeski, Dohman, Spagnoletti, Terra,

---

[148]   CASC at ¶ 46.

[149]   Id. at ¶ 56.

[150]   Id. at ¶ 55.

Bender, Cox, Everding, and Curran when, while serving as supervisors, they failed to intervene and prevent the alleged retaliatory conduct of their subordinates.[151]

These claims rest upon a theory of respondeat superior, which fails to support a § 1983 action.  Evancho, 423 F.3d at 353; see also Gay, 917 F.2d at 771.  Plaintiff does not allege that defendants Varner, Wenerowicz, Shaylor, Spagnoletti, Cox, or Everding had any personal involvement or contemporaneous knowledge of the conduct of their subordinates.

The allegations contained in the Consolidated Amended and Supplemental Complaint indicate that defendants Kryeski, Dohman, Terra, Bender, and Curran did have some personal involvement in the underlying allegedly constitutionally violative events.[152]

Despite plaintiff's allegations regarding the personal involvement of defendants Kryeski, Dohman, Terra, Bender, and Curran, plaintiff names them in this Count for their role as supervisors rather than for their personal involvement.  As noted, supervisors cannot be held liable on a theory of respondeat superior where they did not have contemporaneous knowledge or acquiesce in the actions of subordinates.  Evancho, 423 F.3d at 353; see also Gay, 917 F.2d at 771.

---

[151]    CASC at ¶ 127.

[152]    Id. at ¶¶ 49, 58, 63, 64, 66, 89-91, 103, 105.

Plaintiff did not allege, for example, that defendants Dohman, Terra, or Bender knew that the property room officers were withholding his property for retaliatory purposes and acquiesced in that conduct.  Nor did plaintiff allege that defendants Kryeski or Curran had contemporaneous knowledge of any constitutionally violative conduct of other defendants and acquiesced in it.  Accordingly, Count 7 is dismissed.

<u>Count 8</u>

Count 8 of the Consolidated Amended and Supplemental Complaint raises claims under the First, Sixth, Eighth, and Fourteenth Amendments based on the alleged withholding of plaintiff's mitigation evidence by defendants Kryeski and Curran, which plaintiff argues constitutes a denial of his right to access to the courts.[153]

As discussed with respect to Count Two, this claim is barred because if plaintiff were to prevail on this claim, it would undermine the legitimacy of his criminal convictions.  <u>See</u> <u>Heck</u>, 512 U.S. at 487, 114 S.Ct. at 2372, 129 L.Ed.2d 383 (1994).  The proper method for plaintiff to bring this claim is through direct and collateral appeals, including a habeas corpus action under 28 U.S.C. § 2254.  Accordingly, Count 8 is dismissed.

---

[153]   CASC at ¶ 128.

### Count 9

Count 9 of the Consolidated Amended and Supplemental Complaint is a synthesis of the claims raised in the preceding eight counts.  As each of these claims has already been addressed in the discussion of the first eight counts of the Consolidated Amended and Supplemental Complaint, no further discussion is needed here.

I note that plaintiff has not explicitly named defendant Melissa Smith in any Count.  A possible exception is his inclusion of "all defendants" in Count 9.  However, it is unclear from the language in Count 9 what legal basis, if any, plaintiff relies upon to support his claim against defendant Smith.  Accordingly, defendant Smith is dismissed from the Consolidated Amended and Supplemental Complaint.

### CONCLUSION

For all of the foregoing reasons, Defendants' Motion to Dismiss is granted in part and denied in part.  The Motion to Dismiss is granted to the extent that it seeks dismissal of Counts 1 through 5 and 7 through 9.  It is further granted to the extent that it seeks dismissal of Count 6 with respect to defendants Kryeski, Curran, and Rivera.  The Motion to Dismiss is denied to the extent that it seeks dismissal of Count 6 with respect to defendants Dohman, Bender, Moyer, Fina, and Hall.

-44-

Finally, defendants' Motion to Accept Late Filing is granted as unopposed.