UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

OMAR SHERIEFF CASH,                 :
                                     :
                Plaintiff,           :
                                     :
        v.                           :    No. 2:12-cv-05268
                                     :
THOMAS DOHMAN; JEFFREY BENDER;      :
BRIAN MOYER; PATRICK FINA; and      :
ISAIAH HALL,                         :
                                     :
                Defendants.          :
_____

**O P I N I O N**

**Defendants' Motion for Summary Judgment, ECF Nos. 114, 115 – Granted**

**Joseph F. Leeson, Jr.**                                                     **March 29, 2017**
**United States District Judge**

**I.      Introduction**

Defendants Major Thomas Dohman, Lieutenant Jeffrey Bender, Officer Brian Moyer, Officer Patrick Fina, and Officer Isaiah Hall move for summary judgment on Plaintiff Omar Sherieff Cash's retaliation claims against them. For the reasons set forth below, Defendants' motion is granted.

**II.     Background**

The procedural background of this case is summarized in the Court's Opinion issued March 14, 2016. ECF No. 79. As a result of the Court's Order and Opinion issued on that date, all of Cash's claims were dismissed except for his retaliation claims against Defendants Moyer, Dohman, Hall, Fina, and Bender. Defendants now move for summary judgment on those claims, ECF Nos. 114-15, and Cash has filed a response in opposition to Defendants' motion, ECF No. 122.

## III. Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law, and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 257 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## IV. Analysis

The Court considers Cash's retaliation claims against each of the Defendants in turn.

### A. Officer Moyer is entitled to judgment on Cash's retaliation claim.

The undisputed facts concerning Moyer are as follows. On January 15, 2013, Cash was temporarily transferred from SCI-Albion to SCI-Graterford. Defs.' Statement of Facts (hereinafter "Defs.' Facts") ¶ 6, ECF No. 115-1. Upon arrival at SCI-Graterford, Cash was taken to the search area. *Id.* ¶ 7. After Cash was searched, Officer Moyer and another corrections officer escorted Cash from the search area to Cash's cell. *Id.* ¶ 8. When Cash arrived at his cell, his property box was waiting for him there; he does not know who brought the property box into his cell. *Id.* ¶ 9. Cash searched his property box while Officer Moyer and the other officers were still present outside of his cell. *Id.* ¶ 10. Upon inspecting his property box, Cash found his legal papers, soap, and deodorant in the box, but alleges that one of his books and some cosmetic items were missing. *Id.* He alleges that he asked Officer Moyer about his missing property and Moyer responded "you pissed off the higher ups, so we basically can do whatever we want to do to you." *Id.* ¶ 11.

To prevail on a retaliation claim, a plaintiff must demonstrate three things. First, he must show that his conduct leading to the retaliation was constitutionally protected. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Second, he must show that he suffered an adverse action by a prison official or other state actor. *Id.* Adverse action can be shown if the retaliatory conduct would deter a person of ordinary firmness from exercising the constitutional right at issue. *Id.* Third, he must show that his protected activity was a "substantial or motivating factor" in the state actor's decision to take the adverse action. *Id.* at 333-34.

Defendants contend that Officer Moyer is entitled to judgment on Cash's retaliation claim against him because Cash has failed to show a genuine dispute of material fact with respect to

3
032918

the second element of a retaliation claim, the existence of an adverse action. They contend that Officer Moyer's alleged statement to Cash that "you pissed off the higher ups, so we basically can do whatever we want to do to you" was, at most, a threat, which under the law is insufficient to show an adverse action. Defendants further point out that Cash has not alleged that Officer Moyer destroyed, confiscated, or even handled his property, nor has Cash alleged that Officer Moyer had any control over the persons who may have taken his property. In response to Defendants' Motion, Cash merely repeats his allegation about Officer Moyer's statement to him.

Defendants are correct that Cash has failed to show a genuine issue of material fact with respect to his retaliation claim against Officer Moyer. Officer Moyer's alleged statement was at most a vague threat to take some future action against Cash, which, as Defendants point out, is insufficient to constitute retaliation. *See Gay v. City of Philadelphia*, No. CIV.A. 03-CV-5358, 2005 WL 1844407, at *5 (E.D. Pa. Aug. 2, 2005), *aff'd*, 205 F. App'x 931 (3d Cir. 2006) ("Allegations that defendants . . . threatened to confiscate or destroy [the plaintiff's] legal materials, without more, fail to state a cause of action because plaintiff suffered no adverse action."). Accordingly, Officer Moyer is entitled to summary judgment on Cash's retaliation claim against him.

**B.     Major Dohman is entitled to judgment on Cash's retaliation claim.**

The undisputed facts concerning Major Dohman are as follows. On November 9, 2012, while at SCI-Albion, Cash pleaded guilty to two misconduct charges for "unauthorized use of mail or telephone" and "loaning or borrowing property," after admitting that he had used two other inmates' telephone PIN codes to make his own personal phone calls. Defs.' Facts ¶ 16. As a result of the misconduct charges, Cash was sentenced to forty-five days of Disciplinary Custody effective November 5, 2012, through December 19, 2012, after which time he would

return to Administrative Custody. *Id.* ¶ 17. He also lost his television, radio, and telephone privileges. *Id.* His telephone privileges were to be reinstated ninety days after he returned to Administrative Custody status. *Id.*

On January 15, 2013, as mentioned above, Cash was temporarily transferred from SCI-Albion to SCI-Graterford. *See id.* ¶ 18. On January 23, 2013, Cash attended a meeting before the Program Review Committee ("PRC") at SCI-Graterford; Major Dohman was one of the committee members. *Id.* ¶ 19. At the meeting, Cash requested that the committee members permit him to have the same telephone privileges that he had at SCI-Albion. *Id.* ¶ 20. As of the date of the meeting, however, Cash's telephone privileges had not been reinstated, because he had been back on Administrative Custody status for only thirty-three days and his sanctions provided that telephone privileges would be reinstated only after ninety days. *Id.* ¶ 21. Major Dohman informed Cash that he would be allowed one legal phone call and no personal phone calls and said "stop filing lawsuits and you will get your phone calls." *Id.* ¶¶ 22-23.

On January 23, 2013, Cash filed a grievance relating to the incident with Major Dohman. *Id.* ¶ 24. On January 24, 2013, the Initial Response Review denied the grievance. *Id.* ¶ 25. The only subsequent correspondence from Cash to the Facility Manager regarding the grievance is dated April 17, 2013, nearly three months after the date of the initial response. *Id.* ¶ 26. Cash never filed a final appeal of his grievance. *Id.* ¶ 27.

Defendants contend that Major Dohman is entitled to judgment on Cash's retaliation claim against him for two reasons. First, they argue that Major Dohman did not deny Cash anything to which he was entitled (and thus did not subject Cash to an adverse action), since at the time of the PRC meeting Cash's telephone calls were still restricted as a result of his misconduct charges at SCI-Albion. Second, Defendants contend that Cash failed to exhaust his

5
032918

administrative remedies with respect to his grievance against Major Dohman because Cash did not file a timely initial appeal or second appeal, as provided for by the Pennsylvania Department of Corrections Inmate Grievance System, Policy Number DC-ADM 804.

In response, Cash argues that Major Dohman's statement at the PRC meeting "clearly implies [he] was supposed to be receiving phone calls . . . and [Dohman] was denying [Cash's] phone calls due to the pending lawsuit, not because [Cash] was serving a sanction, as any/all sanctions had been served." Pl.'s Resp. 2. With respect to Defendants' argument that Cash failed to exhaust his administrative remedies, Cash contends that he was informed that his grievance was denied because "DC-ADM 802 [Administrative Custody] procedures are not grievable." *Id.* Accordingly, he contends that his "course for redress . . . became non-existent." *Id.*

The Court agrees with Defendants that Cash has failed to show a genuine dispute of material fact with respect to whether Major Dohman took an adverse action against him, as Cash has failed to produce any evidence to rebut Defendants' contention that at the time of the PRC meeting he was not entitled to any personal calls. Rather, Cash simply claims, without explanation, that "any/all sanctions had been served" at the time of the meeting. But the documents Cash cites in support of this claim clearly show that he was to have "[i]ncreased phone calls" only after ninety days in Administrative Custody status, which Cash had not yet completed at the time of the PRC meeting. *See* Pl.'s Resp. Ex. A. Accordingly, Cash has failed to show a genuine dispute of material fact with respect to his claim against Major Dohman.[1]

---

[1] Although the point is moot in view of the Court's decision on the merits, the Court notes that it does agree with Cash that further appeals through the DC-ADM Inmate Grievance Policy were not available to him. The Prison Litigation Reform Act requires the exhaustion of administrative remedies only as they are "available." *See Brown v. Croak*, 312 F.3d 109, 110 (3d Cir. 2002). Here, the stated reason for the rejection of Cash's grievance against Major Dohman was that grievances related to "DC ADM 802 Administrative Custody Procedures . . . shall be handled according to procedures specified in the policies listed and shall not be reviewed by the

**C. Officer Hall is entitled to judgment on Cash's retaliation claim.**

The undisputed facts concerning Officer Hall are as follows. Cash, as an inmate on the Level 5 housing unit, was required to be strip searched every time he left his cell and when he returned to his cell. Defs.' Facts ¶ 29. On March 21, 2015, Officer Hall and another officer conducted a strip search of Cash in preparation for him to go to the law library. *Id.* ¶ 28. Cash alleges that during this search, Officer Hall ordered him to "squeeze his penis" and Cash complained that this was not part of the strip search procedure. *Id.* ¶ 34. Afterwards, Officer Hall escorted Cash to the library, and Cash alleges that when he complained to Officer Hall about the strip search, Officer Hall responded "file another lawsuit." *Id.* ¶ 35. On March 26, 2013, Cash filed a grievance related to the March 21, 2013 incident with Officer Hall. *Id.* ¶ 37. On April 18, 2013, following an investigation of the grievance, the Initial Response Review denied the grievance. *Id.* ¶ 40. Cash filed a timely appeal of the grievance to the Facility Manager, who upheld the initial response. *Id.* ¶ 42. Cash filed a final appeal of the grievance to the Pennsylvania Department of Corrections (DOC) Secretary's Office of Inmate Grievances and Appeals (SOIGA), but it was rejected because it was not submitted timely. *Id.* ¶ 43.

Defendants contend that Cash failed to properly exhaust his claim against Officer Hall because he failed to file a timely appeal to SOIGA. In response, Cash states that he "exhausted [the] grievance." Pl.'s Resp. 2, ECF No. 122.

---

Facility Grievance Coordinator." *See* Defs.' Ex. 4-D, ECF No. 115-5. Accordingly, the additional levels of appeal provided by DC-ADM 804 were not "available" to Cash for this grievance, and Cash cannot be faulted for failing to pursue them. *See Bucano v. Austin*, No. CV 15-67 ERIE, 2017 WL 4563948, at *8 (W.D. Pa. Oct. 13, 2017) ("It is nonsensical for Defendants to argue that Plaintiff should have used an appellate procedure provided for by DC-ADM 804 when they expressly told her that they would not address her claims pursuant to DC-ADM 804."). Nor have Defendants shown that Cash failed to exhaust any remedies he might have had under DC-ADM 802.

Under the Prison Litigation Reform Act (PLRA), exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law. *See* 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81 (2006). Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004). Under the PLRA, "defendants must plead and prove failure to exhaust as an affirmative defense." *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Here, it is undisputed that the Pennsylvania DOC sets forth a detailed procedure for inmate grievances that requires an inmate to file a grievance within thirty days of the incident and sets forth a first level appeal to the Facility Manager, which must be filed within fifteen days of the date of the initial decision, and a final appeal to SOIGA, which must be filed within fifteen days of the Facility Manager's decision. *See* Defs.' Facts ¶ 12. It is also undisputed that Cash failed to timely file a SOIGA appeal. *See* Defs.' Ex. 4-C at 1, ECF No. 155-5 (showing that Cash's final appeal was rejected as untimely). Cash has not meaningfully disputed this, other than to vaguely claim that he exhausted his grievance. Accordingly, Defendants have shown that Cash failed to exhaust his administrative remedies with respect to his claim against Officer Hall, and Officer Hall is entitled to judgment on this claim.

**D. Officer Fina and Lieutenant Bender are entitled to judgment on Cash's retaliation claims.**

The undisputed facts concerning Officer Fina and Lieutenant Bender are as follows. On March 25, 2013, Officer Fina came to Cash's cell and asked him to pack his property in a box to be brought to the property room in advance of his transfer back to SCI-Albion. Defs.' Facts ¶ 44. Cash packed his property in the box and placed it on a cart. *Id.* ¶ 45. Cash alleges that he asked Officer Fina about an inventory of his property and Officer Fina replied that he was taking the

8
032918

property to the property room and did not feel like doing an inventory, and said "I could throw this s--t away like they did before and there ain't nothing going to happen anyway like that had happened before." *Id.* Cash saw Officer Fina wheel the cart with his property box to the front gate of the cell block and leave. *Id.* ¶ 46. Cash signed a form titled "Inmate Personal Property Inventory" dated March 25, 2013. *Id.* ¶ 47. Officer Fina stated that he took Cash's property box to the property room. *See id.* ¶ 48. One or two days later, Cash saw a box with his name in the observation booth on the block with Lt. Bender. *Id.* ¶ 49. Cash alleges that he asked Lt. Bender to return the box to him and Lt. Bender responded "you might have to file another lawsuit to get that stuff back." *Id.* ¶ 50. Cash never received the property that he packed in the box on March 25, 2013. *Id.* ¶ 51.

On March 25, 2013, Plaintiff filed a grievance relating to this incident. *Id.* ¶ 52. On April 11, 2013, the Initial Response Review denied the grievance on the grounds that Officer Fina had inventoried Cash's property and taken it to the property room. *Id.* ¶ 55. On April 22, 2013, Cash appealed the grievance to the Facility Manager. *Id.* ¶ 56. On May 17, 2013, the Facility Manager remanded the grievance for further investigation because he determined that Cash's property box was never sent by the property room to SCI-Albion. *Id.* ¶ 57. On July 24, 2013, after further investigation, Captain J.W. Spagnoletti issued a revised Initial Review Response to the grievance stating that although Cash's property box had not been sent to SCI-Albion in March, following Cash's temporary transfer to SCI-Graterford in June, two property boxes were sent to SCI-Albion on July 11, 2013. Cpt. Spagnoletti could not determine if Plaintiff lost any property as SCI-Albion could not find an inventory sheet for the second box. *See id.* ¶ 58. Cash did not file an appeal to the Facility Manager of this second Initial Review Response, nor did he file a final appeal to SOIGA for this grievance. *Id.* ¶¶ 59-60.

Defendants move for summary judgment on two grounds. First, they contend that Cash has failed to show evidence from which a reasonable jury could find that Officer Fina and Lieutenant Bender were responsible for the loss of his property. Specifically, they contend that although "[s]omeone in the property room failed to mail [Cash's] box to SCI-Albion . . . . [t]here is no evidence that either Officer Fina or Lt. Bender were responsible for that failure." Defs.' Mem. Supp. Mot. 10, ECF No. 115. Second, they contend that Cash failed to exhaust his administrative remedies with respect to his grievance against Officer Fina and Lieutenant Bender. In his response, Cash does not attempt to rebut the merits of Defendants' contentions. With respect to the exhaustion issue, Cash contends that the DOC grievance policy provides that, following a remand, "the Grievance officer shall respond to the inmate within 15 working days." Here, Cash contends, the remand notice was issued on May 17, but the revised response was not issued until July 24. He also states that he filed an appeal on June 20, 2013.

Fina and Bender are entitled to summary judgment because Cash failed to exhaust his administrative remedies when he did not appeal the revised response. Cash is correct that the DOC grievance policy provides that, following a remand, the Grievance officer shall respond to the inmate within fifteen working days and that this deadline was not met here, as the revised response was not issued until July 24, more than two months after the remand. But the untimeliness of the revised response does not excuse Cash's failure to appeal that response. The Court of Appeals for the Third Circuit has held "that a litigant who had received no response to his grievance could not be faulted, in the context of administrative exhaustion, for failing to file an appeal." *See Basemore v. Vihlidal*, 605 F. App'x 105, 109 n.6 (3d Cir. 2015) (citing *Small v. Camden County*, 728 F.3d 265 (3d Cir. 2013)). But Cash ultimately received a revised response, albeit untimely, and there is no evidence in the record that the untimeliness of the revised

10
032918

response prevented him from appealing that response. *See id.* (holding that an untimely response by the facility manager did not excuse the plaintiff's failure to exhaust administrative remedies); *Lawson v. Ferdarko*, No. CV 15-177, 2017 WL 36915, at *5 (W.D. Pa. Jan. 4, 2017) (finding that despite an untimely response from the prison, the plaintiff "had every opportunity to proceed with his administrative remedies when he received [the] denial of his grievance"). Accordingly, "[b]y refusing to re-engage in and complete the administrative process, [Cash] deprived prison officials (and himself) of the opportunity to resolve his grievance." *See Lawson*, 2017 WL 36915, at *5. Cash is not excused from the PLRA's exhaustion requirement, as he has not demonstrated that the process was unavailable to him, and judgment will be granted in Fina and Bender's favor.[2]

**V.     Conclusion**

For the reasons set forth above, Defendants' Motion for Summary Judgment is granted. A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[2] Because the Court finds that Cash failed to exhaust his administrative remedies on this claim, it need not address the merits of this claim.